628 So.2d 1376 (1993)
Edward Earl NEELY
v.
STATE of Mississippi, ex rel. Tate County, Ms.
No. 91-CA-0304.
Supreme Court of Mississippi.
December 9, 1993.
James D. Minor, Oxford, for appellant.
*1377 Michael C. Moore, Atty. Gen., James M. Hood, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
BANKS, Justice, for the Court:

I.
This forfeiture case requires that we construe the "close proximity" statutory presumption of forfeitability with regard to money found on the Neely's person and drugs found in his vehicle. Neely also challenges the stop and search of his vehicle and the evidentiary support for the conclusion that the substance found was cocaine. We hold that the confidential informant's (CI) tip justified the stop and search, that Neely's admission as to the nature of the substance was sufficient for the finding that the substance was cocaine. We conclude that if the "close proximity" presumption arose it was sufficiently rebutted. Accordingly, we affirm in all respects, except for the forfeiture of the money.

II.
Following the arrest of Edward Earl Neely for trafficking crack cocaine, the State of Mississippi filed this civil action, a Petition for Forfeiture pursuant to Miss. Code Ann. § 41-29-101 et seq. (Supp. 1993). The State sought forfeiture of Neely's red 1984 Chevrolet Camaro and the property found in the car, namely $1,270 in U.S. currency, on the grounds that the vehicle and cash had been used, or were intended for use, in drug trafficking in violation of this State's controlled substances statutes.
On January 25, 1991, a hearing was held to determine if the property of Edward Earl Neely, charged with possession of a controlled substance with intent to sell, was subject to forfeiture. His trial on the criminal charge of possession with intent to distribute was scheduled for May 13, 1991.
The State called Deputy Larry Hulette of the Tate County Sheriff's Department, Officer Marlin Stanford, Officer Lonnie Broadway, as well as, Chief Deputy Eddie Hadskey. Hulette testified on June 12, 1990, he received a telephone call from a confidential informant, whose tips Hulette had successfully used in the past. The CI told Hulette that Neely was dealing crack and that Neely would be making a delivery that night. The CI also told Hulette that Neely would be travelling east on Arkabutla Road with crack in his vehicle. Acting on the CI's tip, Hulette drove to Arkabutla Road.
Based on testimony of the State's witnesses adduced at the January 25th forfeiture hearing, the events transpired as follows. Hulette spotted Neely's vehicle and radioed for back-up. Neely was headed east on Arkabutla Road, but turned around in front of Hulette and headed westward. Hulette flashed his patrol lights. Neely drove about a mile and a half before he pulled into a driveway. Neely got out of his car and was met half-way by Hulette. Having heard Hulette's call for assistance Officer Stanford arrived on the scene shortly after Neely got out of his car.
When Hulette met Neely near his car, Hulette asked to see Neely's license. Neely produced his license. Hulette testified that he asked Neely for permission to search his car. Stanford corroborated Hulette's testimony.
Hulette conducted the search while the other officers watched Neely. Hulette found a matchbox in Neely's vehicle between the passenger seat and the console with what appeared to be two rocks of crack. Hulette showed the contents of the matchbox to Stanford. Around that time, Neely stated that he didn't sell cocaine. Rather, he had bought it for his personal use. Neely was arrested and given his Miranda rights.
Stanford, whose shift was winding up, left the scene. Hulette transported Neely to the Tate County Jail. Broadway stayed behind to wait for a tow truck to pull Neely's car to the sheriff's department. When the tow truck arrived and picked up the vehicle, Broadway followed it to the sheriff's department. *1378 The sheriff's office held the property from that date forward.
Meanwhile at the jail, Neely was searched and police found $1,270 in Neely's pocket, Hadskey testified. Neely was charged with possession of a controlled substance. Neely was given his Miranda rights again. Hadskey testified that Neely signed a Miranda waiver. He also signed two seizure forms for his car and $1,270. Neely was questioned about the two rocks of crack. He said the crack belonged to him but he didn't sell cocaine. Neely told the officers that he had been using crack for about four months and that family problems drove him to use the drug.
The State called its other witness Ronnie Taylor, sales manager of vehicles for Moore's Chevrolet-Olds, Inc., of Senatobia for eight years and an employee of the dealership for nineteen years. The trial court declared Taylor to be an expert in the field of the resale value of Chevrolet vehicles. Taylor testified that the NADA Guide Book value for the vehicle was $3,675 but, in his personal opinion, the car was worth "a little less" as the vehicle had some damage.
On cross, Taylor said he had no knowledge that the car was seized when he examined it. Taylor testified that the $3,675 figure was taken from the January 14, 1991, NADA Guide Book. According to the September 1990 NADA Guide Book, the same vehicle had a value of $5,500.
Neely moved for a directed verdict on the ground that the State had failed to prove a controlled substance was found in the vehicle and, therefore, the vehicle and money were not subject to forfeiture under our statutes. Neely also moved for dismissal on the ground that the search and seizure of the contraband was unconstitutional.[1] The State responded that there was testimony from the State's witnesses that Neely admitted that the substance in the vehicle was crack cocaine and "there was plenty of testimony it was found in the automobile." The State never responded to the search and seizure contention.
The court denied Neely's motion for directed verdict (failure to prove controlled substance in the vehicle) and motion to dismiss (failure to prove consent where no probable cause to search existed). The court determined that the directed verdict was not warranted as the State was entitled to all reasonable inferences drawn from the evidence that the substance found in the vehicle was crack. Regarding the search and seizure, the court found (1) that Hulette received information from a CI regarding Neely; (2) that the CI had been used with success in prior arrests; (3) that Neely was driving on a road and in the same direction that the CI told Hulette Neely would be driving; and (4) because of this, Hulette had probable cause to stop the vehicle. Furthermore, the court found that based on Hulette's testimony Neely gave consent to search the vehicle.
Neely testified on his own behalf as the only witness in his case-in-chief. Neely claimed he was headed back home, west of Coldwater, when he was stopped by Hulette. According to Neely, he was pulled over by Hulette, who asked to see his driver's license. Neely stepped out of his vehicle. At that time, Hulette began to search his car. At no time did Neely consent to this search.
On cross examination, Neely stated every officer, except Hulette, who testified that he consented to the search was not present for the search. He therefore denied ever giving his permission to search the car in their presence. Neely also stated that the $1,270 on his possession was not made from the sale of cocaine but was rather his savings. On Fifth Amendment grounds, Neely refused to answer questions concerning the presence of cocaine in the car and if he had given an inculpatory statement to the police at the Sheriff's Department.
On redirect, Neely testified that he had the large sum of money on his person because he *1379 had just cashed a pay check, he had to retire child support debt, he had to pay for a blood test ($380) and he had to pay for a motorcycle repair bill ($600). In partial support of this, Neely provided two exhibits: (1) an unpaid bill of $601.48 to the motorcycle shop and (2) a cashed paycheck, dated June 10, 1990, for $313.44. Neely also testified on redirect that he had yet to pay for the blood test.
After Neely rested, he renewed the motions he made following the close of the State's case-in-chief. Furthermore, Neely argued that the vehicle had a value in excess of $5,000 at the time of the seizure (June 12, 1990) and that the State failed to prove a nexus, based on the totality of circumstances, between the amount of money seized and illicit drug revenues. The trial court denied the motion and entered an order directing forfeiture of the car and money. Following denial of Neely's motion for new trial, he perfected an appeal to this court.

III.
Neely argues on appeal that there was no probable cause for the stop. As such, the subsequent search and seizure of his property violated the Fourth and Fourteenth amendments to the U.S. Constitution as well as section 23 of the Mississippi Constitution.
Apparently conceding, as he must, that the issue of whether the actual consent was consensual is one of fact resolved against him by the fact finder on conflicting testimony, Neely focuses upon the justification for the initial stop. It is conceded that Neely had committed no traffic offense and that the sole basis for the stop was the information supplied by the CI.
It is elementary that probable cause is not a prerequisite to a brief investigatory stop, where the officer has reasonable suspicion based on articulable facts that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968).
The issue here is whether the information provided by the CI was sufficient under the interpretation of the Fourth and Fourteenth Amendments to the U.S. Constitution, as most recently pronounced in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
Neely makes no contention that any other law applies, opting to rely instead upon factors which he argues distinguish White. We reject Neely's distinctions.
In White there was information from an anonymous source that a certain person, the defendant, would leave a certain place, at a certain time carrying an ounce of cocaine in a brown attache case and drive a particular vehicle to a certain destination. The officers went to the point of departure and observed the defendant leave and embark upon the most direct route to the alleged destination whereupon they stopped the vehicle. Upon gaining permission to search, the officers discovered a pound of marijuana in the brief case. Applying the "totality of the circumstances" test, the Court ruled that the stop was lawful.
It is clear that White controls here. In fact, the officer in the case sub judice could have stopped Neely on the basis of the tip alone without any independent police corroboration. Key v. State, 566 So.2d 251, 253 (Ala.Cr.App. 1990), citing Adams v. Williams, 407 U.S. 143, 146-147, 92 S.Ct. 1921, 1923-1924, 32 L.Ed.2d 612 (1972). In Adams, the court recognized that an unverified tip from a known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a Terry stop. Id. at 147, 92 S.Ct. at 1924. The Adams rationale is applicable to this case. In the case sub judice the tip came from a known informant and the information supplied by this CI had been successfully used by the officer in the past. Based on his previous dealings with this CI, Hulette had reason to believe that the information the CI provided about Neely was true. Under those circumstances, the tip alone provided the necessary indicia of reliability to justify the stop because it came from a confidential informant, whose dealings with the officer had shown him to be honest and reliable.
*1380 However, we will assume that the CI's tip did not rise to the necessary level of reliability to justify the stop. Thus, it becomes necessary to consider whether the stop could be sustained on the basis of the tip, as corroborated with the officer's independent police work. Here, the CI told the officer that Neely was travelling in a certain direction on a certain road and that Neely was headed out of town to sell the crack. Since the officer knew Neely, he apparently knew what kind of car Neely would be driving. Acting on the CI's tip, the officer went to Arkabutla Road. Shortly thereafter, he spotted Neely who was travelling in the direction that the CI said he would be travelling. As the White Court pointed out what was significant was the CI's ability to predict Neely's future behavior, because it demonstrated inside information  a special familiarity with Neely's affairs. White, 496 U.S. at 332, 110 S.Ct. at 2417. Thus, the officer's independent police work coupled with the tip exhibited sufficient indicia of reliability to justify the investigatory stop.

IV.
Neely also contends that there was no proof, other than his statements, that the substance found in his vehicle was a controlled substance. Neely's statements constituted statements by a party opponent and thus were admissible against him. Mississippi Rules of Evidence 801(d)(2) defines an admission by a party-opponent as a statement offered against a party and is "(A) his own statement, in either his individual or representative capacity... ." Such statements are not treated merely as prior inconsistent statements admissable for impeachment only but as admissions. Id. It is clear that admissions of a party come in as substantive evidence of the facts admitted.
When confronted with the substance that looked like crack cocaine, there is nothing in the evidence that shows that Neely denied that the substance was what it appeared to be. Neely never told the officers that he didn't know what the substance found in his car was or that the substance did not belong to him. Instead, Neely's statements tend to support the view that the substance was crack cocaine. Neely told the officers that the substance was for his personal use. Additionally, Neely told the officers that he didn't sell cocaine, but he had some family problems at home and he had been using it (crack cocaine) for about four months. Since this is not a criminal case, Neely's statements were sufficient to establish by a preponderance of the evidence that the substance was in fact cocaine. Under those circumstances, no other evidence was necessary to establish that the substance in question was cocaine. See, People v. Ortiz, 197 Ill. App.3d 250, 143 Ill.Dec. 481, 554 N.E.2d 416 (1 Dist. 1990).

V.
Neely argues that there was insufficient proof of the necessary nexus between the money and the cocaine to warrant its seizure by the State. We agree. The petition sought forfeiture of $1,270 in cash found in Neely's pocket after two "rocks" of crack cocaine were found in Neely's car. The forfeiture proceedings were made pursuant to Miss. Code Ann. § 41-29-153(a)(5) and (a)(7) and § 41-29-179(4) (Supp. 1993). Miss. Code Ann. § 41-29-153(a)(5) and (a)(7) (Supp. 1993) provide:
(a) The following are subject to forfeiture:
(5) All money, deadly weapons, books, records, and research products and materials, including formulas, microfilm, tapes and data which are used, or intended for use, in violation of this article.
(7) Everything of value, including real estate, furnished or intended to be furnished in exchange for a controlled substance in violation of this article, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, businesses or business investments, securities, and other things of value used, or intended to be used, to facilitate any violation of this article. All moneys, coin and currency found in close proximity to forfeitable controlled substances, to forfeitable drug manufacturing or distributing paraphernalia, or to *1381 forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption.
It is clear that Mississippi does not favor forfeitures, and, before forfeitures will be decreed or adjudged, they must come within the terms of the statute imposing that liability. Reed v. State, ex rel. Mississippi Bureau of Narcotics, 460 So.2d 115 (Miss. 1984). There is no question that this case comes within the purview of Mississippi's forfeiture statutes. The question, here, is whether the money was used to facilitate the illegal transportation, sale, receipt, possession or concealment of controlled substances.
This Court has held that the burden is on the State to prove forfeiture by a preponderance of the evidence. Jones v. State, ex rel. Mississippi DPS, 607 So.2d 23, 29 (Miss. 1991), citing Saik v. State, ex rel. Mississippi Bureau of Narcotics, 473 So.2d 188, 191 (Miss. 1985). To aid the State in carrying the burden, the Legislature created a rebuttable presumption that drugs and money found in close proximity are presumed to be forfeitable. However, where it is established that the drugs and money were not in close proximity, the presumption does not arise.
This Court has never interpreted "close proximity" under section 41-29-153(a)(7). However, this Court in Jones cited with approval the explanation offered by the Supreme Court of Arkansas that "close proximity" means "very near". See, Limon v. State, 285 Ark. 166, 685 S.W.2d 515 (1985). In Jones this Court held that the close proximity test is met where marijuana and money are found in a suitcase. Jones, 607 So.2d at 30.
This case is distinguishable from Jones. The drugs and the money were not found together in the same place. The crack cocaine was found in the car. The money was found on Neely's person. Objects carried on the person are mobile and, in the context of this statute, should not ordinarily be viewed as in close proximity to anything not also on the person, unless the circumstances are such that the fact finder can reasonably infer that the object not found on the person had been on the person immediately prior to discovery, at a time when the object of forfeiture was also on the person. Obviously all of the facts and circumstances must be taken into account, including whether the package is of such a size as would ordinarily be carried on the person. Here the controlled substance was in a match box. It was on the passenger side of a console dividing the driver and passenger and could easily have been placed there by Neely at the time that he was pulled over. On the other hand, this record contains no evidence of furtive gestures or any other suggestion that Neely had handled the package in question. The question whether the close proximity presumption arose is therefore problematic. We need not decide whether the evidence is sufficient, however, for we conclude that even if the presumption arose it was sufficiently rebutted.
This Court addressed the issue of rebutting the presumption of forfeitability in Jones. We held that the defendant did not rebut the presumption where he failed to give any testimony as to why a large amount of cash was in close proximity to a forfeitable controlled substance. The court noted that "Jones did not deny that the money was in close proximity to a controlled substance and has not explained why it was in close proximity." Id. at 29.
Here, Neely denied that the money was in close proximity to the crack cocaine. He also offered a reason why he was carrying the money on his person at the time in question. Additionally, there was no evidence that Neely was a drug dealer. Evidence was adduced to show that Neely was gainfully employed and that he was earning more than $300 per week. No evidence was offered to contradict the evidence offered by Neely. The trial court was free to reject Neely's proffered explanation as to its intended use. However, in the absence of direct proof of trafficking, where there is uncontradicted proof of an alternate source, the statutory presumption *1382 has been rebutted and disappears. See, Miss.R.Evid. 301.
That is not to say that forfeiture is warranted only where the State overcomes the "close proximity" presumption. Even without the presumption, the State still may be able to establish that the money was forfeitable. The State cites Carter v. State, 465 So.2d 1156 (Ala. Civ. App. 1984) for the proposition that the money can be forfeited without a close proximity presumption. In Carter authorities seized $3,190 in cash, along with a plastic bag of marijuana, in the top drawer of a chest in the defendant's bedroom. The defendant claimed that he had earned the money by doing "tree surgery work" at six dollars per hour. The Alabama court held that the money was "forfeitable due to the close proximity of money and illegal drugs; (2) the separate bags of marijuana; (3) the amount of money found; and (4) the veracity of the defendant."
To further support its contention that the money is forfeitable, the State relies on several out-of-state cases. Lettner v. Plummer, 559 S.W.2d 785 (Tenn. 1977), State v. One (1) 1979 Chevrolet Camaro Z-28, 202 N.J. Super. 222, 494 A.2d 816 (App.Div. 1985) and Valles v. State, 646 S.W.2d 636 (Tex. App. 1 Dist. 1983).
In Lettner, both the controlled substances and money were found on the defendant's person. The court held that that alone was not enough to satisfy the State's burden of proof to establish by a preponderance of the evidence that the cash was received in consideration for, or in exchange for, an unlawful controlled substance. Instead, the Tennessee court found that the defendant's unemployment, lack of visible means of support and his reputation known to the officers of engaging in the trafficking of drugs was sufficient circumstantial evidence to establish that the seized money was forfeitable. 559 S.W.2d at 787.
Like the defendant in Lettner, officers also found $1,440 in cash and .55 grams of methamphetamine, both on the person of the defendant, in One (1) 1979 Chevrolet Camaro Z-28. In the New Jersey case, the defendant claimed that $1,440 were proceeds from a recently cashed insurance check. The court, however, did not accept the defendant's story and held that the money was forfeitable. Its decision was based on the facts that (1) the defendant pled guilty to possession with intent to distribute; (2) he admitted prior trafficking in illegal drugs; and (3) at the time the money was seized, he gave no explanation as to why the money was in his possession. 494 A.2d at 822.
Here, however, there is no direct proof that the money in question is forfeitable. The only supporting evidence is that Neely was found in constructive possession of cocaine. This is not enough. The same evidence offered by Neely that would have rebutted the close proximity presumption had it arisen serves to dictate a directed verdict in his favor on the issue of the cash.

VI.
For the foregoing reasons, the judgment below is affirmed in all respects except with regard to the cash. As to the cash, the judgment is reversed and rendered.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] Neely does not concede in his motion that he consented to a search of the vehicle. Id. at 47. He noted that the State provided no documentation that he consented to the search. Id.