IRVING, J.,
for the Court.
¶ 1. This appeal arises from the Lafayette County Circuit Court’s order of forfeiture of $4,801 from Derek Nations. Aggrieved by the judgment, Nations appeals and asserts: (1) that a “close proximity” presumption does not apply in this case; (2) that if such a presumption exists, it was rebutted; and (3) that the State did not prove that the seized money was possessed “for the purposes of facilitating an illegal narcotics scheme.”
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. Nations was under indictment for selling marijuana on December 2, 2008, when he sold marijuana to a confidential informant working with the Lafayette County Metro Narcotics Unit (LCMNU). Two days later, on December 4, 2008, LCMNU agents went to Nations’s apartment to serve an arrest warrant on him. In the process of arresting Nations, the officers requested and obtained his permission to search his room. The search of the room revealed scales, marijuana, pipes, bongs, pieces of bongs, sandwich bags, and $4,801 in cash. The money was found in five separate locations throughout Nations’s room, including two desk drawers, two jars, and a folder found under Nations’s mattress. The marijuana and paraphernalia were found scattered throughout the bedroom. After locating all of the cash, the LCMNU agents consolidated it into one pile, the total value of which they *396 then ascertained. No effort was made to keep the money in separate piles based on its origin, but the money from each area was counted separately before adding it to the pile. One hundred and forty dollars in recorded bills that had been used by the confidential informant was found, although the LCMNU agents did not ascertain where those bills were found in the room.[1]
¶ 4. Thereafter, on December 8, 2008, Nations filed a petition contesting the forfeiture of the $4,801. Two days later, the State of Mississippi filed a forfeiture action against Nations. After a December 10, 2008, hearing at which multiple witnesses testified, the circuit court ruled in favor of the State. The court found that the money had been “commingled,” such that its origin could not be discerned. It is from that decision that Nations appeals.
¶ 5. Additional facts will be related, as necessary, during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 6. “The appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test.” Galloway v. City of New Albany, 735 So.2d 407, 410(15) (Miss.1999) (citing Hickman v. State ex rel. Miss. Dep’t of Pub. Safety, 592 So.2d 44, 46 (Miss.1991); McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989); Leatherwood v. State, 539 So.2d 1378, 1387 (Miss.1989)). Essentially, we “will not disturb a circuit court’s findings unless it has applied an erroneous legal standard to decide the question of fact.” Id. (citing Hickman, 592 So.2d at 46). We remain mindful of the fact that “[forfeiture statutes are penal in nature and must be strictly construed.” Evans v. City of Aberdeen, 926 So.2d 181, 183(5) (Miss.2006) (quoting Evans v. City of Aberdeen, 925 So.2d 850, 853(11) (Miss.Ct.App.2005)).

1. Application of Presumption

¶ 7. Mississippi Code Annotated section 41-29-153(a)(7) (Rev.2009) states, in pertinent part: “All monies, coin and currency found in close proximity to forfei-table controlled substances, [or] to forfeita-ble drug manufacturing or distributing paraphernalia ... are presumed to be for-feitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption.” Nations argues that this presumption should not apply in his case because:
the forfeiture statute places the burden on the State to prove the “close proximity” presumption’s applicability ... [and] the State’s failure to properly record these facts in the course of the search makes it impossible for a reasonable fact-finder to say with any degree of certainty that any of the money ... was “in close proximity” to drugs or drug paraphernalia.
¶ 8. There are very few Mississippi cases examining what constitutes “close proximity” in the context of section 41-29-153. However, we find our supreme court’s holding in City of Meridian v. Hodge, 632 So.2d 1309, 1312-13 (Miss.1994) to be instructive:
Although this Court has never interpreted “close proximity” in a forfeiture context, courts in other jurisdictions have done so. In Limon v. State, 285 Ark. 166, 685 S.W.2d 515 (1985), the court *397 upheld the forfeiture of $8,000 found in a kitchen drawer with boxes of plastic bags and aluminum foil. Other drug paraphernalia was on the table and a vial of cocaine was nearby. Seventeen hundred seventy dollars was also found on a bathroom shelf next to a bag of marijuana. The Arkansas Supreme Court defined “close proximity” as follows:
“In close proximity” simply means “very near.” For that reason it has been said that the meaning of the term in such a statute is to be determined on a case-by-case basis. Bozman v. Office of Finance of Baltimore County, 52 Md.App. 1, 445 A.2d 1073 (Md.App.1982), aff'd 296 Md. 492, 463 A.2d 832 (1983). We agree with that approach and do not mean by this opinion to suggest rigid rules for fixing “close proximity” by a particular number of feet, by reference to particular rooms, or by any rule of thumb. Here the two plastic bags containing $1,770 were next to a bag of marihuana. The $3,000 was in two plastic bags in a kitchen drawer along with boxes of plastic bags and aluminum foil. Other drug paraphernalia were on the kitchen table; the cocaine vial was nearby. We think the preponderance of the evidence places all the money, not merely the $1,770, in close proximity to controlled substances or drug paraphernalia. That being true, all the money is presumed under the statute to be forfeitable. There is no burden on the State to show separately a specific intent that the money is to be used in exchange for drugs, because the statute provides that money found in close proximity to for-feitable articles is “presumed to be forfeitable.”
Limon, 685 S.W.2d at 516-17.
The record in the present case is silent as to the exact location of where the jar was found and its proximity to the marijuana and other drug paraphernalia. Furthermore, the specific dimensions of the trailer were not stated. What is known is that marijuana was maintained and sold in the kitchen and living room. The search warrant authorized a search of the entire trailer, not just the living room and kitchen. Like the Arkansas court, we are not prepared, to define “close proximity” in terms of a measured distance. Neither are we prepared to say that controlled substances anywhere in a residence are considered as a matter of law in “close proximity” to any currency also found in that residence. Thus, we cannot say that the trial court erred in failing to find that the drugs in question were in such close proximity to the cash as to invoke the statutory presumption.
The inference by the trial judge that the overall sum of money comprised of several small bills and change did not constitute drug sale receipts is also a permissible inference. That a different fact-finder might give less weight to this inference because the Hodges were not high-volume drug dealers is of no moment. We do not sit to substitute our judgment for that of the trial court. Clearly, the trial court could have, on this evidence, concluded that all of the cash in question was the product of or used in the trafficking of marijuana. Unaided by the statutory presumption, however, the only evidence in support of this conclusion is the fact that the “buy money” was found with the other cash. Arrayed against this is the Hodges’ denial that the money was derived from the sale of drug[s], the fact that one of the occupants of the trailer was otherwise gainfully employed and the denominations in which the money was found. *398 The weight to be given these evidentiary facts is for the trial court to determine. Its determination, either way, would be affirmed by this Court.
(Emphasis added). Unlike in Hodge, the cash, drugs, and paraphernalia here were found in one room. Agent Keith Davis, an LCMNU agent, testified that the majority of the money, $3,428, was found in two drawers in the same desk in which was also found “a bag of marijuana.” Agent Davis’s testimony was unclear as to whether any of the money in the desk was in the same drawer as the marijuana. Furthermore, Agent Davis testified that a small amount of the recovered money was found on top of the desk, which also had “real small pieces of marijuana” on it. Agent Davis also testified that multiple items of drug paraphernalia were scattered throughout the bedroom.
¶ 9. Given the facts of this case, we find that there was credible evidence establishing the proximity presumption. This contention of error is without merit.

2. Rebuttal of the Proximity Presumption

¶ 10. Nations contends that the testimonies of two witnesses, John Glass and Sara Roberts, were sufficient to rebut the proximity presumption. Glass, a Honda dealership employee, testified that on December 1, 2008, Nations traded a 2008 Honda Accord for an older vehicle, and that Nations received a check from the dealership for just under ten thousand dollars as a result of the transaction. Roberts, Nations’s ex-girlfriend, testified that Nations used the money from the sale of the car to buy a large flat-screen television in Jackson, Mississippi. She did not know how much the television cost, but she believed that there was some money left over from the sale of the car after the television was purchased. She admitted that she had no idea how much money was left over or where Nations kept the leftover money after the television was purchased. As support for his contention that the testimonies of these two witnesses were sufficient to rebut the proximity presumption, Nations directs this Court’s attention to Neely v. State ex rel. Tate County, 628 So.2d 1376, 1381-82 (Miss.1993).
¶ 11. In Neely, the Mississippi Supreme Court found that any proximity presumption in that case was rebutted by Edward Neely’s explanation of the source of the money that was seized from him and by the lack of evidence that Neely was a drug dealer. Id. at 1381. The Neely court noted Neely’s explanation for the money that was found:
Neely testified that he had the large sum of money on his person because he had just cashed a pay check, he had to retire child support debt, he had to pay for a blood test ($380) and he had to pay for a motorcycle repair bill ($600). In partial support of this, Neely provided two exhibits: (1) an unpaid bill of $601.48 to the motorcycle shop and (2) a cashed paycheck, dated June 10, 1990, for $313.44. Neely also testified on redirect that he had yet to pay for the blood test.
Id. at 1378-79.
¶ 12. In the present case, Nations has provided no such explanation as the appellant in Neely. Although evidence was introduced to the effect that Nations had just cashed a check for $9,990 from the sale of his vehicle, Roberts indicated that Nations used that money to purchase a large flat-screen television. Roberts could not remember how much the television cost and had no idea how much money Nations had after the purchase of the television. Furthermore, unlike in Neely, there was uncontradicted evidence in this case that Nations was dealing drugs *399 around the time of the seizure. The appellant in Neely provided documentary support for his explanations, whereas Nations has provided no such support. There was simply no way for the circuit court or this Court to ascertain how much money Nations had left over from the sale of his vehicle or what he may have done with any that may have been left over after the purchase of the television.
¶ 13. We also note that, although Nations did not testify, Agent Davis testified that Nations was less than candid about how much of the money was from the sale of drugs:
On the 8th of December!,] Mr. Nations stopped me while I was in the Detention Center and asked me if I had a moment!,] and I advised him that I did. Mr. Nations advised me at that point that only $70 of the funds that was seized would be official [M]etro funds!,] and I advised Mr. Nations was he sure about that!,] and he said, yes, he was[,] and I advised Mr. Nations that I did not believe him because at that time I already checked the serial numbers and knew there was $140 in there.
Therefore, there was testimony questioning the veracity of any of Nations’s assertions as to how much of the money was from illicit sources. The testimony was uncontradicted that the drug sale on December 2 was for $140; however, none of the five locations in Nations’s bedroom contained only $140. Therefore, even though LCMNU agents failed to note where the recorded bills were found, it is clear that the money used in the drug sale was mixed with some of the money that was found in Nations’s room.
¶ 14. During arguments at the forfeiture hearing, Nations’s attorney stated that he could “personally testify, not on the stand, but he paid me part of that money [from the sale of his ear].” There are two logical conclusions that can be drawn from this statement: (1) that Nations still had the money from the sale of his car, after the money had been seized from his apartment; or (2) that he used the money on December 2 or 3 to pay his attorney. If the former is true, then it appears that the money from the sale of the vehicle was not seized as part of the $4,801. If the latter is true, then that payment would have further reduced the amount of money that Nations had left over from the sale.
¶ 15. Based on all of the foregoing, we find that Nations failed to rebut the proximity presumption. This issue is without merit.

3. Further Proof of Validity of Forfeiture

¶ 16. Finally, Nations claims that “[i]f the ‘close proximity’ presumption does not apply or has been rebutted,” then the State did not adequately prove a reason for the forfeiture. Because we have found that the presumption applies and was not rebutted, we find no merit to this issue. However, we note that even if the presumption did not apply, we would still affirm the circuit court’s judgment.
¶ 17. In a forfeiture case involving drugs, the burden is on the State to prove, by a preponderance of the evidence, “that it is more likely than not that the currency was possessed by the claimant with the intent to be used in connection with an illegal narcotics trafficking scheme.” Jones v. State ex rel. Miss. Dep’t of Pub. Safety, 607 So.2d 23, 29 (Miss.1991).
¶ 18. Several thousands of dollars were found in Nations’s bedroom, along with and in close proximity to marijuana and multiple items of drug paraphernalia. Nations provided no explanation for the money other than the money from the sale of the car three days before the seizure of *400 the money from his apartment. However, Roberts testified that Nations spent the money from the sale of the car on a large flat-screen television, and no further evidence was provided to indicate how much of the money from the sale of the car was left over. Furthermore, Searn Lynch, the commander of the LCMNU, testified that it is not unusual for drug dealers to store cash in multiple locations; he testified that it was his experience that the “normal activity of drug dealers [is] to keep their funds in different locations.” Finally, the $140 that was used by the confidential informant was not found separate from the other money in Nations’s room. Given these facts, we cannot find that the State failed to prove that the money was most likely used in connection with illegal drug trafficking, which Nations irrefutably participated in on multiple occasions.
¶ 19. This contention of error is also without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ, CONCUR.

. These bills were not marked, but their serial numbers were recorded prior to their use in the drug sale on December 2. Testimony at trial indicated that the LCMNU agents did not have the serial numbers with them on December 4, so they were unable to record where the bills used in the buy were in the bedroom.