# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00818-COA

**CURTIS BROWN**                                                    **APPELLANT**

**v.**

**PROFESSIONAL BUILDING SERVICES, INC.**                  **APPELLEE**

DATE OF JUDGMENT:             03/24/2016
TRIAL JUDGE:                  HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT,
                              FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:      STEVEN HISER FUNDERBURG
                              CRAIG ROBERT SESSUMS
ATTORNEYS FOR APPELLEE:       JASON HOOD STRONG
                              ROBERT L. GIBBS
                              RICHARD BENJAMIN MCMURTRAY
NATURE OF THE CASE:           CIVIL - PERSONAL INJURY
DISPOSITION:                  AFFIRMED - 10/17/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### WILSON, J., FOR THE COURT:

¶1.    Curtis Brown was the clubhouse manager at Colonial Country Club in Jackson. Brown alleges that he suffered simultaneous bilateral patellar tendon ruptures when he fell over a chair in the doorway of the club's grill on a Friday evening in 2012. He alleges that the club's cleaning service, Professional Building Services ("PBS"), left the chair in the doorway. Brown sued PBS for negligence, and the case proceeded to a jury trial. The jury returned a verdict for PBS, the trial court denied Brown's post-trial motions and entered judgment on the verdict, and Brown appealed.

¶2.     On appeal, Brown argues that the trial judge abused his discretion by (1) overruling Brown's objection to a photo of a chair in the doorway to the grill, (2) denying Brown's request for a jury instruction that specifically mentioned that the overhead lights in the grill were turned off, (3) allowing a defense expert in biomechanics to testify that Brown's claim that he suffered bilateral patellar tendon ruptures by walking into a chair was not "plausible," (4) excluding one answer from his treating physician's deposition testimony regarding the general possibility that there could be mistakes in medical records, and (5) by responding to a note from a juror with a general instruction to continue deliberations. We find no abuse of discretion in any of these rulings. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     Brown was the clubhouse manager at Colonial County Club in Jackson. Brown testified that on Friday, September 28, 2012, he arrived at the clubhouse around 5 p.m. to do his monthly inventory of the grill and 19th hole lounge. A crew from PBS arrived around 7 p.m. to begin cleaning. Around 8:30 p.m., a member of the PBS crew told Brown that they were finished and were leaving. Brown was then the only person still in the clubhouse.

¶4.     After he finished the inventory and some work in his office, Brown began walking around the clubhouse to make sure all the doors were locked. Brown testified that "as soon as [he] made the turn" from the hallway into the doorway of the grill, he stumbled and fell over a chair. Brown testified that the "chair was right in [the] doorway" to the grill and that he did not see the chair before he walked into it. The lights were on in the hallway outside

2

the grill, but the overhead lights in the grill were turned off. Inside the grill, beer signs, an ice cream machine, and a soda machine near the bar provided some illumination. There was also some light from floodlights in the pool area just outside the grill. On direct examination, Brown testified that the "room is never totally dark." On cross-examination, he agreed that there was "quite a bit of light there," even with the overhead lights turned off.

¶5. Brown testified that after he fell over the chair, his entire body went to the ground and the chair turned over. He immediately felt intense pain in both of his knees, and then he passed out. When he regained consciousness, he tried to get to his feet, but he fell back to the ground and passed out again. When he again regained consciousness, there was a mouse close to his face, which startled him. The mouse ran away, and Brown eventually managed to retrieve his cell phone and call his brother. His brother and a nephew came to the club and took Brown to St. Dominic Hospital.

¶6. Brown was diagnosed with bilateral patellar tendon ruptures, and doctors performed surgery on him the next day. Brown's injuries and surgery were extremely painful, and he spent over two months at Methodist Rehabilitation Hospital after he was released from St. Dominic. Brown continued outpatient rehabilitation for months after he was released from Methodist, and his injuries required additional surgeries. For several months, he required assistance with basic daily activities, and he has never fully recovered from the injuries.

¶7. Although Brown alleged in his complaint and testified at trial that he was injured when he walked into and fell over a chair in the door to the grill, multiple records from St.

3

Dominic reflect that as soon as Brown was admitted to the hospital—and before he was given any pain medication—he told doctors and nurses that he was injured when he fell forward onto both of his knees while running up stairs at work. On Sunday, the day after his surgery, Brown told Colonial's general manager, Michael Barrett, that he was injured when he fell over a chair while chasing what he thought was a rat or a mouse through the grill. While he was still at St. Dominic, Brown also told Grace Owens, a bartender at the club, that he fell over a chair in the grill while chasing a mouse or a rat. At trial, Brown testified that he could not recall giving these different versions of events to the doctors, nurses, Barrett, and Owens. He testified that a mouse was near his face the second time he regained consciousness, but he denied that he fell while chasing a mouse or running up stairs.

¶8. In December 2014, Brown filed a complaint against PBS alleging negligence. The case proceeded to a jury trial on March 7-10, 2016, and the jury returned a verdict in favor of PBS. The jury's verdict was in the form of a "no" answer to the question whether Brown had "proven by a preponderance of the evidence his claim that [PBS] was negligent and that such negligence, if any, proximately caused or contributed to [Brown's] damages." The circuit court denied Brown's post-trial motions and entered final judgment on the jury verdict, and Brown appealed.

¶9. As noted above, Brown raises a total of five issues on appeal. The Court has reviewed the briefs and record as to all five issues, and the Court is in unanimous agreement that the trial judge committed no abuse of discretion as to issues (2), (4), and (5). The controlling

4

legal principles on those issues are well settled, and their discussion and application to the facts of this case would not add value to the jurisprudence of this State. Accordingly, we forgo discussion of those issues. *Cf. Gen. Motors Corp. v. Jackson*, 636 So. 2d 310, 311 (Miss. 1992).

¶10. We address issues (1) and (3) below and discuss additional facts as needed.

**ANALYSIS**

**I. The trial judge did not abuse his discretion by admitting exhibit 29, a photo of a chair in the grill doorway.**

¶11. Prior to trial, Brown filed a motion in limine that sought to exclude several types of evidence, including photos "taken by defense counsel . . . in an attempt to 're-create' the scene." Brown's motion argued:

> [T]hese photographs were taken by defense counsel . . . in an attempt to "re-create" the accident scene but were not taken contemporaneously. Moreover, the angles and positioning of the room and chair in question are not accurate and are deliberately photographed to favor Defendant. Plaintiff has no objection to general photographs of the room in question but move[s] to exclude any attempt by the Defendant to show re-created pictures to the jury allegedly to demonstrate the positioning of the chair (pre- or post-accident) are not authentic, accurate or permissible and should be excluded . . . .

¶12. The photo that was eventually admitted into evidence as exhibit 29 is attached as an appendix to this opinion.[1] The photo depicts a chair in the doorway to the grill.

¶13. In response to Brown's motion, PBS acknowledged that the chair should have been facing left rather than right—i.e., it should have been rotated 180 degrees. With that caveat,

_____

[1] This is the reproduction of the photo that Brown uploaded to the Court's website as page five of his opening brief on appeal.

5

PBS maintained that the photo fairly depicted Brown's own recorded statement that the chair was "right in the doorway." PBS relied on a statement that Brown, with counsel present, gave to PBS's insurer in July 2014. In that statement, Brown said that the chair was "[l]iterally, right in the doorway," "[m]aybe inches" or "maybe a foot" inside the room. In addition, Brown's December 2014 complaint alleged that he "fell over a chair which had been left in the middle of the doorway." At his March 2015 deposition, Brown testified that the chair was not square in the middle of the doorway but was "a little bit more" toward the right edge of the door and "a little bit more" inside the room. However, Brown also testified that he could not say exactly where the chair was positioned because:

> I never saw the chair. When I stepped into it, I never saw it.
>
> . . . .
>
> I never saw it. I never saw the chair until I stepped—when I hit it. I don't remember seeing it. I just remember going down.

¶14. There is no dispute that the doorway depicted is the relevant doorway or that the chair depicted is the type of chair that Brown alleges he stumbled and fell over.

¶15. At the hearing on the motion, the trial judge asked Brown's counsel whether he had anything to add to his written motion. Counsel answered,

> Not really. Other than I think it's conceded. Number one, the pictures were taken by defense counsel. Number two, that it's not a hundred percent accurate. It doesn't recreate the accident scene as it existed. And because of that we don't think that it's relevant or appropriate to offer something that they contend is close or worse; that they've staged to obtain some advantage by the way the chair's turned or, you know, how it appears from which angle in the hallway. It's conceded that it's not accurate.

6

¶16. Brown's counsel later argued that the photo was "not relevant" because the chair was not "positioned correctly"; however, he pointed to no inaccuracy except that the chair was facing the wrong direction. Counsel did not raise any objection based on lighting conditions or any other objection to the photo. Other similarly lighted photos of the grill, chairs, and doorway were admitted without objection, and Brown made use of them at trial.

¶17. The trial judge told the parties that he would take the motion in limine under advisement but that he might rule on it before trial. Prior to trial, the judge ruled that PBS could "offer one photo including the slight chair placement inaccuracy, but the inaccuracy shall be explained to the jury, either through witness testimony or through an agreed stipulation, so as to avoid any confusion to the jury."

¶18. Counsel for PBS used the photo in his opening statement, and Brown's attorney objected, arguing that such use of the photo violated the court's ruling in limine. The court overruled the objection, and counsel for PBS immediately explained to the jury that chair should have been facing left rather than right. After opening statements, the photo was admitted into evidence without further objection by Brown.

¶19. On direct examination, Brown testified that the chair "was right in that doorway":

    Q.    All right. Explain to me—where was that chair located?

    A.    The chair . . . was right in that doorway. . . .

    . . . .

    Q.    And the chair was right in that doorway . . . ?

A.      In that doorway, right.

Brown later testified that the chair was not square in the middle of the doorway but slightly toward the right edge of the doorway and turned at a slight angle.[2]

¶20.    "We review a circuit judge's decision to admit or exclude evidence for an abuse of discretion." *Dickerson v. State*, 175 So. 3d 8, 20 (¶37) (Miss. 2015). The Supreme Court has "long held that the admissibility of photographs is within the sound discretion of the trial court and that the trial judge has a wide latitude in admitting them." *Tunica Cty. v. Matthews*, 926 So. 2d 209, 217 (¶18) (Miss. 2006). "*Some* probative value is the only requirement needed in order to support a trial judge's decision to admit photographs into evidence." *Beasley v. State*, 136 So. 3d 393, 401 (¶25) (Miss. 2014) (quotation marks omitted) (emphasis in original). "[T]he mere fact that the photographs were taken at a time when conditions were somewhat changed does not render such photographs inadmissible so long as the changes are carefully pointed out to the jury." *Nelson v. Phoenix of Hartford Ins.*, 318 So. 2d 839, 843 (Miss. 1975).

¶21.    Applying these principles and our deferential standard of review, we cannot say that the trial judge abused his discretion by overruling Brown's objections to exhibit 29. The photo depicts the chair facing the wrong direction, but Brown does not explain how that inaccuracy was material to any issue in the case. Otherwise, the photo was consistent with and fairly depicted Brown's recorded statement, which he gave with counsel present.

_____

[2] Brown also testified, as he had in his deposition, that he never saw the chair until he walked into it.

8

Brown's recorded statement was substantive evidence that the trial judge was entitled to consider in ruling on Brown's pretrial motion in limine. *See* M.R.E. 801(d)(2); *Neely v. State ex rel. Tate Cty.*, 628 So. 2d 1376, 1380 (Miss. 1993).[3] At his deposition (and again at trial) Brown testified to differences in the angle and positioning of the chair. However, these differences were straightforward and could be "carefully pointed out to the jury." *Nelson*, 318 So. 2d at 843. Accordingly, it was within the discretion of the trial judge to overrule the objection to the photo. *Id.*

¶22.    On appeal, Brown also argues that exhibit 29 shows significantly more light than there was in the grill at the time of his injury, which occurred at night with the overhead lights in the grill turned off. However, Brown made no contemporaneous objection to exhibit 29 based on lighting conditions. The issue was not mentioned in his written motion or at any point during the argument on the motion. In addition, Brown did not object to other similarly lighted photos of the grill, chairs, and door, and he made use of such photos at trial. "[A]n objection on one or more specific grounds constitutes a waiver of all other grounds." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008) (quotation marks omitted). "[A]n objection cannot be enlarged [on appeal] to embrace an omission not complained of at trial." *Id.* "This Court cannot find a trial judge committed reversible error on a matter not brought before him or her to consider." *Id.* As Brown did not object to exhibit 29 based on lighting conditions, the issue is waived.

---

[3] Of course, the trial judge was not strictly bound by the rules of evidence in making this ruling. M.R.E. 104(a).

¶23. Procedural bar notwithstanding, there was testimony regarding the differences in the lighting conditions, and the jury was capable of considering those differences. Brown did not claim that the grill was completely dark. The lights in the hallway just outside the grill were turned on. Brown also testified that there were lights from behind the bar from beer signs, an ice cream machine, and a soda machine. There was also light from two floodlights by the pool on the opposite side of the grill. On direct examination, Brown testified that the "room is never totally dark," and on cross-examination, he agreed that there was "quite a bit of light there." The jury heard this testimony and was capable of understanding that there was more light in the photo than on the night in question.

¶24. In summary, the trial judge did not abuse his "wide" discretion in admitting the photo into evidence. *Matthews*, 926 So. 2d at 217 (¶18). In particular, the trial judge did not abuse his discretion in overruling the specific objections that Brown made at trial. Moreover, the photo was not so unfairly prejudicial that it would require a new trial, even if it should have been excluded.[4] Brown's arguments give the jury too little credit. The jurors were capable of considering the photo and the uncomplicated testimony about it without being confused or misled. *See, e.g.*, *Cannon v. State*, 190 So. 2d 848, 851 (Miss. 1966) ("[I]t must be assumed that the members of the jury were men of ordinary intelligence . . . .").

## II. The trial judge did not abuse his discretion by allowing Dr. Charles Bain to testify as an expert in biomechanics.

---

[4] *See, e.g.*, *Ill. Cent. R.R. v. Brent*, 133 So. 3d 760, 779 (¶42) (Miss. 2013) ("For a case to be reversed based on the admission or exclusion of evidence, a party must be actually prejudiced, harmed, or have a substantial right adversely affected.").

¶25.    Prior to trial, PBS disclosed that it would call Dr. Charles Bain to testify at trial as an expert witness in the field of biomechanics. Dr. Bain's undergraduate degree from the Royal Military College of Canada is in nuclear engineering, which he described as a combination of mechanical and chemical engineering and nuclear science. Dr. Bain also has a medical degree from Queen's University in Canada. He practiced family and emergency medicine in Canada for nineteen years. For the past thirteen years, he has studied biomechanics while working as a consultant and expert witness for Biodynamic Research Corporation. Dr. Bain also serves as an adjunct professor at the United States Air Force School of Aerospace Medicine. He has co-authored six published articles in the field of biomechanics, and numerous courts have accepted him as an expert witness in the field, although his testimony has been excluded in other cases.

¶26.    In this case, Dr. Bain conducted an "Injury Causation Analysis" or "ICA." Dr. Bain's report, which PBS produced approximately five months prior to trial, described an ICA as a combined process involving biomechanics and medical analysis. Dr. Bain reviewed Brown's medical records, depositions, and documents produced in discovery. In his report, Dr. Bain stated that "[t]he mechanism for a patellar tendon laceration is direct trauma or vigorous contraction of the quadriceps muscle while the knee is in a flexed position." Dr. Bain also cited studies regarding the forces required to produce such an injury. He testified, to a reasonable degree of scientific certainty, that walking into a chair, even at a fast walking speed, would not generate forces sufficient to produce a bilateral patellar tendon rupture.

11

Thus, he opined that it was "highly implausible" or "highly unlikely" that the injury in this case occurred as described by Brown in his trial and deposition testimony.

¶27. Brown first raised a possible objection to Dr. Bain's testimony at the end of the third day of the trial, when his counsel told the trial judge that they were "probably going to have a challenge" to Dr. Bain, who was scheduled to testify first the next morning. The judge noted that PBS produced Dr. Bain's report almost five months before trial, and he asked why the issue was being raised in an oral motion the evening before Dr. Bain was to testify.[5] However, Brown's objection was not too late to preserve the issue for review, *see Applewhite*, 53 So. 3d at 756 (¶21), and the trial judge permitted Brown to examine Dr. Bain outside the presence of the jury and then argue his motion the following morning.

¶28. The trial judge found that Dr. Bain was qualified and that his testimony was relevant and admissible. The trial judge relied on this Court's decision in *Mitchell v. Glimm*, 819 So. 2d 548, 552 (¶9) (Miss. Ct. App. 2002), which affirmed the admission of similar testimony by a similarly credentialed witness. In *Mitchell*, this Court held that the defense expert, a medical doctor who also held a degree in engineering, was qualified to testify regarding biomechanics, injury causation, the forces involved in the subject automobile collision, and the effect those forces would have on the human body. *Id.* We further held that the trial judge did not abuse his discretion in allowing the expert to testify. *Id.*

---

[5] *See Hyundai Motor Am. v. Applewhite*, 53 So. 3d 749, 755 (¶18) (Miss. 2011) ("Hyundai was well aware of the substance of plaintiffs' expert testimony [months before trial] and had sufficient opportunity to challenge its reliability before trial. Instead, Hyundai waited until the trial was underway to make its *Daubert* objections.").

¶29. On appeal, Brown argues that the trial judge abused his discretion because Dr. Bain's "opinions . . . were unreliable, speculative, and misleading." Brown argues that Dr. Bain's opinions were not reliable because he did not conduct "any testing or simulation," take "any measurements," examine Brown, or visit the alleged scene of the injury. Brown argues that "Dr. Bain's opinion was . . . sheer conjecture extrapolated from orthopaedic journals concerning out-of-context forces within the patellar tendon."

¶30. The proponent of expert testimony must show by a preponderance of the evidence that the expert is qualified, that he possesses scientific knowledge that will assist the jury, and that his testimony is based on sufficient facts and data and reliable principles and methods, reliably applied to the facts of the case. *See* M.R.E. 702; *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 592 & n.10 (1993). When this Court reviews "a trial court's decision to allow or disallow . . . expert testimony, we apply an abuse of discretion standard. Unless this Court concludes that a trial court's decision to admit or exclude [the expert testimony] was arbitrary and clearly erroneous, that decision will stand." *Brent*, 133 So. 3d at 779 (¶44) (quotation marks, citation omitted).

¶31. On the record before us, we cannot say that the trial judge abused his discretion by allowing Dr. Bain to testify. Dr. Bain's testimony was relevant to issues in the case, and he demonstrated scientific knowledge that would assist the trier of fact. *See* M.R.E. 702. In addition, as in *Glimm*, the trial judge did not clearly err or abuse his discretion by finding that Dr. Bain was qualified to testify by virtue of his training and experience in engineering and

13

medicine. *See Mitchell*, 819 So. 2d at 552 (¶9); *see also White v. Great W. Cas. Co.*, Civ. No. 08-1491, 2009 WL 2747795, at *2-*4 (W.D. La. Aug. 25, 2009) (finding Dr. Bain qualified to testify in the areas of biomechanics and injury causation analysis in an automobile wreck case); *Sport v. Cont'l W. Ins.*, No. 04-1386, 2006 WL 618271, at *2-*3 & nn.4-5 (D. Kan. Mar. 10, 2006) (same).

¶32. As noted above, the primary disputes in this case are whether Dr. Bain's testimony is based on sufficient facts and data and whether it is reliable. The record on this issue is limited because Brown did not file a pretrial motion, did not present any evidence to challenge the validity of Dr. Bain's opinions, and only engaged Dr. Bain in a brief cross-examination outside the presence of the jury. Dr. Bain's report cited specific, published studies and articles regarding the forces and mechanisms that can cause the patellar tendon to rupture. And Dr. Bain then testified that this research supported his opinion that simply walking into a chair would not produce forces sufficient to rupture a patellar tendon. On appeal, Brown asserts that Dr. Bain relied on inapposite research, but there is nothing in the record to support that assertion. Although Dr. Bain did not discuss the details of the studies that he cited, there is nothing in the record to refute his characterization of them or to show that they do *not* support his opinion.

¶33. Moreover, while Brown criticizes Dr. Bain for not conducting "any testing or simulation" in this case, there is nothing to show that the relatively simple facts of the case required such testing. This case does not involve a high-speed automobile collision or

14

rollover requiring complex calculations of speeds, angles, or energy. For purposes of Dr. Bain's testimony at trial, the question was simply whether, based on the research he cited, the impact and forces associated with a man walking into a chair at a normal speed would be sufficient to cause a bilateral patellar tendon rupture. There is nothing to show that this question required simulations or testing.

¶34. The proponent of expert testimony must show by a preponderance of the evidence that the testimony is reliable. *See Daubert*, 509 U.S. at 592 & n.10. However, as noted above, once the trial judge finds that the proponent has met its burden, this Court will not reverse absent an "abuse of discretion," i.e., unless the trial judge's ruling was "arbitrary and clearly erroneous." *Brent*, 133 So. 3d at 779 (¶44). "When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. The statement imports a view that there are at least two different decisions that the trial court could have made which on appeal must be affirmed." *Darnell v. Darnell*, 167 So. 3d 195, 207 (¶34) (Miss. 2014) (quoting *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)) (alterations omitted). In the instant case, the trial judge could have excluded Dr. Bain's testimony. But, particularly given the absence of any evidence refuting Dr. Bain's testimony and characterization of the relevant research, the trial judge was also within his discretion in allowing Dr. Bain to testify. *See id.* The record on this issue is limited, and it does not show that the trial judge clearly erred in finding that PBS met its burden as the proponent of the testimony. Nor does the record show that the trial judge acted arbitrarily in allowing the testimony.

15

## CONCLUSION

¶35.    We find no abuse of discretion in the trial judge's rulings admitting or excluding evidence, his denial of Brown's proposed jury instructions, or his response to a note from a juror.  Accordingly, the judgment entered on the jury verdict is affirmed.

¶36.    **AFFIRMED**.

    **GRIFFIS, P.J., CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., AND BARNES, J.  TINDELL, J., NOT PARTICIPATING.**

    **WESTBROOKS, J., DISSENTING:**

¶37.    Because I find that the recreated photograph and expert testimony of Dr. Bain should have been excluded, I respectfully dissent.

## DISCUSSION

*A.*     *The admission of the photo recreating the accident scene is  reversible error.*

¶38.    The photograph of the recreated accident scene was taken by PBS's counsel in the daylight, with the chair incorrectly positioned.  PBS conceded that the chair was inaccurately placed in the photograph, but insisted that the inaccuracy of the picture could be explained to the jury.  Brown objected to the use of the photo and filed a motion in limine to exclude its use at trial.

¶39.    The trial court found the photo to be relevant and probative to the issues in the case. However, the court conceded that the inaccurately placed chair in the recreated photo had to

16

be addressed. The judge therefore ordered that the recreated photo could be admitted, but the inaccuracy of the chair placement *shall* be explained to the jury, either through witness testimony or through an agreed stipulation.

¶40. Brown renewed his objection to the photograph at the beginning of trial and reiterated that the photo was inaccurate and not relevant, since PBS's counsel actually took the picture and conceded that the picture was an inaccurate recreation of the accident scene. The court took the matter under advisement, but allowed the photo to be introduced in the defense's opening argument. At no point during the trial did any witness authenticate the picture. Morever, the parties never arrived to an agreed stipulation on the use of the picture at trial.

¶41. "Before a photograph may be admitted into evidence, it must be shown by extrinsic evidence to be a true and faithful representation of the place or subject it purports to represent as it existed at a time pertinent to the inquiry." *Gulf, Mobile & Ohio R.R. v. Golden*, 221 Miss. 253, 72 So. 2d 446, 450 (1954) (internal quotation marks omitted). "The material inquiry is whether or not the photograph is a fair and accurate reproduction and representation of conditions as they existed at the time of the [accident]." *Id*. The Supreme Court has previously held "that the admission of a recreated accident scene was in error where there were a number of material variations between the actual event and the reconstructed event." *Pittman v. Miss. Power & Light Co.*, 368 So. 2d 238, 240 (Miss. 1979).

17

¶42. PBS asserts that but for the slightly inaccurate placement of the chair, the photograph of the recreated accident scene accurately reflects Brown's prerecorded statement to PBS's insurer and the allegations made in his complaint. PBS maintains that since Brown changed his story several times, the recreated accident photo was employed with the intent to illustrate his unreliable recollection of the accident. I do not agree.

¶43. The photograph contained a number of material variations, which were clearly distinguishable from the accident scene. Both parties conceded that the chair was inaccurately placed in the photograph and that the bar's overhead lighting was turned off. Additionally, the accident occurred at night, though the picture was taken during the daytime with complete visibility.

¶44. The majority holds that the trial court did not abuse its discretion in admitting the recreated photograph into evidence, because Brown's story changed numerous times. The majority opinion notes that PBS explained the inaccurate chair placement during the opening statement, and Brown never specifically objected to the photograph's lighting. While he may have given different versions, none of those versions depicted a scene that occurred during plain daylight. Moreover, the fact that Brown's story changed does not negate the fact that all parties were in agreement that the photo was an inaccurate depiction of the accident scene.

¶45. The record also establishes that the photograph could not be authenticated, and PBS's counsel could not have plausibly become a witness to his own case. The trial court mandated that either a witness explain the inaccurate chair placement, or the parties stipulate to its

18

admission. Therefore, PBS counsel's brief explanation of the recreated picture to the jury does not comport with the trial judge's order regarding the admissibility of the photo, and is of no consequence when evaluating the photograph's admissibility.

¶46. The majority notes that the lighting in the photograph was not specifically objected to, resulting in a waiver of the issue. Though Brown did not raise a specific objection to the lighting in the photograph, he challenged the relevancy, authenticity, and accuracy of the recreated photograph. During the hearing on Brown's motion in limine, his counsel argued that the photo did not recreate the accident scene as it existed. The record reflects that the accident occurred between 8 p.m. and 10 p.m. Therefore, a recreated accident scene with full-light visibility does not accurately reflect the circumstances surrounding the accident. It is without question that the recreated photograph was inaccurate. As a result, I would find that the inaccurate photograph of the recreated accident scene should have been excluded from evidence.

> B.  *The trial court abused its discretion in admitting the testimony of Dr. Bain.*

¶47. The majority holds that the trial judge did not abuse his discretion in accepting Dr. Bain as an expert or allowing him to testify regarding the force necessary to rupture patellar tendons. The majority opinion notes that Dr. Bain's credentials and his Injury Causation Analysis report qualifies him as a relevant and reliable expert. In support of this holding, the majority cites this Court's decision in *Mitchell v. Glimm*, 819 So. 2d 548 (Miss. Ct. App. 2002). In *Mitchell*, the plaintiff presented a licensed engineer to testify as to the forces

19

involved in the impact experienced by the plaintiff as a result of the accident. *Id.* at 552 (¶¶8-9). The trial court allowed the expert to testify, but excluded the plaintiff's expert testimony on the effect of the accident's impact on the body. *Id.* The trial court found that the plaintiff's expert had not demonstrated sufficient credentials or experience in the area of biomechanics." *Id.* However, the trial judge did permit the defendant's expert to testify in the field of biomechanics because of the defense expert's credentials. *Id.*

¶48. Here, *Mitchell* is distinguishable from the matter before us because the issue is not Dr. Bain's credentials, but the reliability of his testimony and the assertion that his testimony could conform with that of an orthopedic surgeon. At trial, PBS's attorney argued that Dr. Bain's opinions dovetailed with Brown's orthopedic surgeon's statements regarding the diagnosis and causation of Brown's injuries. Dr. Bain agreed with PBS's assertion, though Dr. Bain never described the methodology used to arrive to his conclusions. Dr. Bain cited published studies and articles regarding the forces and mechanisms that cause a patellar tendon to rupture; however, Dr. Bain did not discuss the details of the studies or the reliability of the science used to conduct those studies. In fact, Dr. Bain never discussed the methodology used to arrive at any of his conclusions regarding Brown's injuries.

¶49. "An expert witness must be qualified to render an opinion and the expert testimony must be relevant and reliable." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 25 (¶41) (Miss. Ct. App. 2011). The expert must demonstrate that his or her opinion "is based upon scientific methods and procedures, not supported speculation." *Utz v. Running & Rolling*

*Trucking Inc.*, 32 So. 3d. 450, 457 (¶10) (Miss. 2010) (quoting *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 947 (¶16) (Miss. 2008)).

¶50.    Dr. Bain was not qualified as an orthopedic surgeon, and had never treated or performed a patellar tendon surgery.  Moreover, PBS's counsel never elicited testimony regarding the principles and methodology that Dr. Bain employed to arrive at his conclusions on the force necessary to rupture patellar tendons.  "In evaluating reliability, the court's focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *McKee v. Bowers Window & Door Co.,* 64 So. 3d 926, 932 (¶18) (Miss. 2011).  The Supreme Court has found that the "party offering expert testimony must show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation."  *Taylor*, 112 So. 3d at 25 (¶42).

¶51.    For this reason, I find that the trial judge committed reversible error and would reverse and remand this case for a new trial.

**LEE, C.J., IRVING, P.J., AND BARNES**, **J., JOIN THIS OPINION.**



EXHIBIT

29
# 251-14-750