KING, Justice,
for the Court:
¶ 1. Illinois Central Railroad Company (“Illinois Central”) appeals from a jury verdict for Perry Brent awarded under the Federal Employers Liability Act (FELA) for injuries he sustained during his employment with Illinois Central. While we find that the trial court erred in failing to grant Illinois Central’s motions for summary judgment and directed verdict on the FELA negligence per se claim, we nonetheless affirm the jury’s general verdict based on Brent’s FELA negligence claim.

FACTS & PROCEDURAL HISTORY

¶ 2. Perry Brent began his employment with Illinois Central in 1965, starting as a general laborer and eventually attaining the position of engineer. On October 27, 1999, Brent and conductor Steve Clay were operating an Illinois Central locomotive traveling from Jackson, Mississippi, to Geismar, Louisiana. The outside “dry bulb” temperature[1] at the time was 70 degrees Farenheit, and the “wet bulb” temperature[2] was approximately 66 degrees Farenheit. Brent’s locomotive was not equipped with air conditioning, so he kept the cab’s side windows open for ventilation.
¶ 3. While traveling near LaPlace, Louisiana, Brent felt a hot object hit his shoulder. Clay inspected Brent’s shoulder, found a small hole in his shirt, and stated that it appeared Brent had been shot. Clay called the local dispatcher, who instructed an ambulance to meet Brent in LaPlace. Brent was transported to River Parishes Hospital in LaPlace, where doctors treated him and then released him a few hours later.
¶ 4. It was later determined that Brent had been shot in the right shoulder by a .177 caliber pellet fired from a Crossman Model 760 Pump Master pellet rifle by fourteen-year old Tray Keys. Keys subsequently pleaded guilty to the crime of aggravated battery.
¶ 5. Brent continued to work for Illinois Central following his injury, but ultimately quit his job on December 14, 1999, when his shoulder pain forced him to stop working. Brent consulted with several doctors concerning his shoulder pain but received differing opinions. Brent eventually un *766 derwent one operation on his shoulder and two operations on his neck, as well as physical therapy to rehabilitate his shoulder. Brent also suffered from depression due to his inability to work, and he received mental health treatment at St. Dominic’s Hospital in Jackson.
¶ 6. Brent filed a complaint against Illinois Central on April 15, 2002, in Hinds County Circuit Court. Brent alleged that Illinois Central negligently failed to provide him with a reasonably safe workplace in violation of FELA. 45 U.S.C.A. § 51 et seq. (1908). Brent also claimed that Illinois Central was negligent per se for violating regulations promulgated under the Locomotive Inspection Act (LIA) and the Federal Railroad Safety Act (FRSA). 49 U.S.C. Section 20701 (1994); 49 U.S.C.A. § 20101 et seq. (1994). Illinois Central countered that Brent’s FELA negligence claim was precluded by the LIA, the FRSA, and regulations promulgated thereunder. Illinois Central also denied violating any safety statutes or regulations.
¶ 7. In 2011, Brent filed a motion for partial summary judgment. Illinois Central filed a response and cross-motion for summary judgment on June 14, 2011, arguing that Brent’s FELA negligence claim failed as a matter of law because it was expressly and implicitly precluded by various federal regulations, and because Brent failed to establish that his injury was foreseeable. The trial court denied both parties’ motions, and the case proceeded to trial on July 11, 2011. At the close of Brent’s case-in-chief, Illinois Central moved for a directed verdict, arguing again that Brent’s claims were precluded by federal regulations, that Brent had failed to prove a violation of any safety regulation, and that Brent had failed to prove that his injury was foreseeable. The court denied this motion.
¶ 8. After both sides rested, the case went to the jury on two theories of liability. First, the jury was instructed that FELA imposed upon Illinois Central a nondelegable duty to use reasonable care to provide its employees with a reasonably safe workplace. If the jury found that Illinois Central had failed to meet this duty, it was instructed to find in favor of Brent. Next, the jury was instructed that Illinois Central had an absolute duty, not dependent on a showing of negligence, to comply with the LIA’s ventilation regulation requiring locomotive cabs to be properly ventilated. 49 CFR § 229.119(d) (1999). The jury was instructed to find in favor of Brent if it found that Illinois Central violated that regulation and that such violation caused Brent’s injury.
¶ 9. The jury returned a general verdict in favor of Brent. On August 12, 2011, the trial court entered a judgment on the verdict in the amount of $500,000. Illinois Central moved for judgment notwithstanding the verdict (JNOV), and the trial court denied the motion. Illinois Central appeals to this Court, raising the following issues: 1) whether Brent’s FELA negligence per se claim based on an alleged violation of federal regulations fails as a matter of law because he failed to prove that the locomotive was not properly ventilated; 2) whether Brent’s FELA negligence claim is precluded by the FRSA; 3) whether Brent failed to prove that the lack of air conditioning on the .locomotive caused his alleged injuries; 4) whether Brent failed to establish that his injuries were reasonably foreseeable; and 5) whether the trial court erred in admitting the testimony of Brent’s expert witness, Lawrence Mann.

ANALYSIS

¶ 10. FELA creates a tort remedy for railroad workers injured on the job *767 and serves as the exclusive remedy for a railroad employee injured as a result of his or her employer’s negligence. Hogue v. Southern Ry. Co., 390 U.S. 516, 517-518, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968); Rivera v. Union Pacific R.R. Co., 378 F.3d 502, 507 (5th Cir.2004). “What constitutes negligence for [FELA] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state or local laws for other purposes. Federal decisional law formulating and applying the concept governs.” Urie v. Thompson, 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Accordingly, this Court is bound to enforce the federal law as Congress has provided and as the federal courts have read it. Illinois Cent. Gulf. R.R. Co. v. Gibbs, 600 So.2d 944, 946 (Miss.1992). However, FELA cases adjudicated in state courts are subject to state procedural rules. St. Louis Southwestern Ry. Co. v. Dickerson, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985).
I. Whether Brent’s FELA negligence per se claim based on an alleged violation of federal regulations fails as a matter of law because he failed to prove that the locomotive was not properly ventilated.
¶ 11. Illinois Central claims that the trial court erred in denying its motions for summary judgment and directed verdict on Brent’s FELA negligence per se claim because Brent failed to prove that Illinois Central violated a federal safety regulation. Regarding Brent’s FELA negligence per se claim, the court instructed the jury as follows:
JURY INSTRUCTION NO. 10: At the time of the occurrence in question, there was in force and effect a Federal Railroad Administration regulation that required the locomotive cab in question be provided with proper ventilation. In this case this duty is absolute and not dependent on a showing of negligence on the part of the Railroad. Therefore, if you find from the preponderance of the evidence in this case that the Plaintiffs injuries for which suit was brought was caused in whole or in part, even in the slightest, as a result of failing to provide a locomotive cab with proper ventilation, then it is your duty as jurors in this case to return a verdict for the Plaintiff, Perry Brent.
The regulation in question requires that locomotive cabs “shall be provided with proper ventilation and with a heating arrangement that maintains a temperature of at least 60 [degrees] Farenheit 6 inches above the center of each seat in the cab.” 49 C.F.R. § 229.119(d) (1999) (emphasis added). No federal regulation in place at the time of the incident required locomotive cabs to be equipped with air conditioning.
¶ 12. This Court reviews a trial court’s grant or denial of summary judgment cíe novo. Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 228 (Miss.2005). This Court conducts a de novo review of motions for directed verdict just as it does with motions for summary judgment. Pace v. Fin. Sec. Life of Miss., 608 So.2d 1135, 1138 (Miss.1992). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). The evidence must be viewed in the light most favorable to the party opposing the motion. Davis v. Hoss, 869 So.2d 397, 401 (Miss.2004).
¶ 13. Questions of sufficiency of evidence for the jury in cases arising un *768 der FELA in state courts are to be determined by federal standards. Brady v. Southern Ry. Co., 820 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 289 (1943) (“[W]hen a state’s jury system requires the court to determine the sufficiency of the evidence to support a finding of a federal right to recover, the correctness of its ruling is a federal question”), abrogated on other grounds by CSX Transp., Inc. v. McBride, — U.S. -, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011); see also Illinois Cent. R.R. Co. v. Gandy, 750 So.2d 527, 532 (Miss.1999) (“When ... a case is brought under FELA in state court, debates over state substantive law are irrelevant because ‘the rights and obligations of the parties are governed by the act, 45 U.S.C.A. §§ 51 to 60, and by federal principles of common law.’ ”). The quantum of evidence required to establish liability in a FELA case is much less than in an ordinary negligence action. Harbin v. Burlington Northern R.R. Co., 921 F.2d 129, 131 (7th Cir.1990). Thus, a directed verdict for the defendant is appropriate only when there is a “complete absence of probative facts” to support the plaintiffs position. Rivera, 378 F.3d at 505. However, the party opposing judgment as a matter of law must offer more than a mere “scintilla of evidence” supporting his claim. Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). “This standard is highly favorable to the plaintiff, and recognizes that the FELA is protective of the plaintiffs right to a jury trial.” Wooden v. Missouri Pac. R.R. Co., 862 F.2d 560, 561 (5th Cir.1989). Accordingly, this Court must affirm the jury’s verdict unless Brent failed to present more than a mere scintilla of evidence of a statutory violation, resulting in a complete absence of probative facts supporting his claim.
¶ 14. In a FELA suit, evidence of an employer’s violation of the LIA or regulations promulgated thereunder suffices to prove negligence as a matter of law. Urie, 337 U.S. at 189, 69 S.Ct. 1018. The United States Supreme Court has held that the LIA is substantively an amendment to FELA, having the purpose and effect of facilitating employee recovery. Id. The LIA provides, in pertinent part:
A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—
(1) are in proper condition and safe to operate without unnecessary danger of personal injury;
(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
(3) can withstand every test prescribed by the Secretary under this chapter.
49 U.S.C. § 20701 (1994). A carrier can violate the LIA in one of two ways. First, it may fail to comply with the LIA itself or regulations promulgated thereunder. See Lilly v. Grand Trunk Western R.R. Co., 317 U.S. 481, 485-486, 63 S.Ct. 347, 87 L.Ed. 411 (1943). Here, the plaintiff must prove “only the statutory violation and thus is relieved of the burden of proving negligence[,]” but “still has to prove a causal relation between a violation and the injury for which he is suing.” Crane v. Cedar Rapids & Iowa City Ry., 395 U.S. 164, 166, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969). Second, even if a carrier complies with all applicable regulations, it may still be found liable under the LIA if the parts and appurtenances of its locomotives are found to be unsafe. Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir.1987). The term “parts and appurtenances” has been interpreted to include *769 “[w]hatever in fact is an integral part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [FRA].... ” Southern Ry. Co. v. Lunsford, 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1986).
¶ 15. The Fourth Circuit Court of Appeals has held that an air conditioning unit does not fit within the scope of “parts and appurtenances” as defined by the United States Supreme Court. Mosco, 817 F.2d at 1091. In Mosco, the plaintiff, an engineer for the defendant railroad, was struck by a rock thrown through the open window of the locomotive he was operating. Id. at 1089. The plaintiff argued that the railroad violated the Boiler Inspection Act[3] by failing to install protective screens over its locomotive cab windows. Id. at 1090. The plaintiff also claimed that the locomotive was not properly ventilated because it was not equipped with air conditioning. Id. at 1092. The trial court granted a directed verdict to the defendant on the BIA claim, and the jury returned a verdict in favor of the defendant on the FELA claim. Id. at 1091. The plaintiff then appealed to the Fourth Circuit, which held that “a carrier cannot be liable under the [LIA] for failure to install equipment on a locomotive unless the omitted equipment (1) is required by applicable federal regulations; or (2) constitutes an integral or essential part of a completed locomotive.” Id. The plaintiffs claim would be viable under the LIA only if the omitted protective devices constituted an integral part of a completed locomotive, and the Fourth Circuit found that they did not. Id. As for the plaintiffs claim of improper ventilation, the plaintiff testified that the ventilation in the cab was adequate with the windows open. Id. at 1092. The Fourth Circuit rejected the argument that the lack of air conditioning essentially negated the protection of the cab windows, reasoning that it failed “to see how this state of affairs violates the requirement that carriers provide their locomotive cabs with adequate ventilation.” Id. Accordingly, the plaintiffs claim of improper ventilation was not viable under the LIA. Id.
¶ 16. In this case, it is undisputed that no regulation in place at the time of Brent’s injury required Illinois Central to install air conditioning on its locomotives.[4] The LIA imposes on railroads “only the duty to maintain the parts and appurtenances of their locomotives in safe and proper condition, and the term ‘parts and appurtenances’ does not include every item of equipment that conceivably could be installed on a locomotive.” Mosco, 817 F.2d at 1091. Accordingly, Illinois Central’s failure to install air conditioning on Brent’s locomotive did not constitute a violation of the LIA ventilation statute.
¶ 17. Brent argues that the jury could have found a lack of proper ventilation based on the fact that Brent needed to open a window partially to ventilate the cab. Indeed, whether a locomotive as a whole is “in proper condition and safe to operate” is the central factual issue in an LIA claim. Lilly, 317 U.S. at 489, 63 S.Ct. 347; see Palmer v. Union Pac. R. Co., 12 F.Supp.2d 588 (S.D.Tex.1998) (denying defendant railroad’s motion for *770 summary judgment in LIA suit, finding that whether an open window constituted “proper ventilation” under the LIA was a factual dispute to be resolved by the jury). However, even viewing the evidence in the light most favorable to Brent, we find that Brent failed to produce any evidence at trial establishing that an open window was an improper method of ventilating the locomotive cab. The Human Factor Guidelines for Locomotive Cabs, published jointly in 1998 by the FRA and the U.S. Department of Transportation, admitted into evidence by Brent, states that open windows, and in some cases doors, are the only ways to provide fresh air to the locomotive cab. Multer, Jordan et al., Human Factor Guidelines for Locomotive Cabins 41 (U.S. Dep’t of Transp. and Fed. Ry. Admin., Nov. 1998), available at http://ntl.bts.gov/lib/42000/42700/42711/ord 9803.pdf (last visited Nov. 18, 2013). Brent’s expert witness Lawrence Mann testified that air conditioning was a feasible method of ventilating a locomotive cab, but he never opined that the cab’s open windows provided inadequate ventilation. In fact, none of Brent’s witnesses ever inspected the locomotive’s then-existing ventilation system to determine its adequacy. Brent testified that he opened the cab windows because it was “pretty warm to me” on the day of the incident. Yet, neither Brent nor any other witness offered any testimony suggesting that leaving the windows closed would have rendered the locomotive unsafe to operate.
¶ 18. We find that Brent failed to present any probative facts to support his claim that the locomotive he was operating was improperly ventilated. Accordingly, we hold that Illinois Central’s motion for directed verdict on Brent’s LIA negligence per se claim should have been granted, and the trial court erred in allowing that claim to go to the jury.
¶ 19. In this case, the jury returned a general verdict form finding Illinois Central liable for Brent’s injury. Thus, we cannot know with certainty whether the jury based its decision on the LIA negligence per se theory or the FELA negligence theory, or both. This Court has held that “where there is a general verdict for the plaintiff under a declaration containing two counts leading to the same liability, such verdict is sufficient if sustained under either count.” Miss. Cent. R.R. Co. v. Aultman, 173 Miss. 622, 160 So. 737, 739 (1935) (citing Levy v. McMullen, 169 Miss. 659, 152 So. 899 (1934)). Therefore, we must determine whether the jury’s verdict can be sustained on Brent’s FELA negligence claim.
II. Whether Brent’s FELA negligence claim is precluded by the FRSA.
¶ 20. Illinois Central claims that the trial court erred in refusing to grant its motions for summary judgment, directed verdict, and JNOV because Brent’s FELA negligence claim is both explicitly and implicitly precluded by other federal laws and regulations. As previously stated, in a FELA case, this Court must not reverse the denial of the defendant’s motion for judgment as a matter of law unless there is a complete absence of probative facts to support the conclusion reached by the jury. Rivera, 378 F.3d at 505.
¶ 21. The FRSA was enacted to “promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.” 49 U.S.C.A. § 20103(a) (1994). The FRSA includes a preemption provision, which provides in pertinent part: “Laws, regulations, and orders related to railroad safety and ... railroad security shall be nationally uniform to the extent practicable.” 49 U.S.C. § 20106(a)(1) (2007). Under this provi *771 sion, a plaintiff can bring an action against a railroad under state law unless the Secretary of Transportation has prescribed a regulation or issued an order “covering the subject matter of the State requirement.” 49 U.S.C. § 20106(a)(2) (2007).
¶ 22. The FRSA preemption provision expressly applies only to state laws and regulations; it does not mention other federal safety laws. Nickels v. Grand Trunk Western R.R., Inc., 560 F.3d 426, 429 (6th Cir.2009). However, several federal courts, including the Fifth Circuit, have held that the uniformity demanded by the FRSA can be achieved only by applying preclusion principles to federal laws, similar to the preemption principles applied to state laws. See Lane v. R.A Sims, Jr., Inc., 241 F.3d 439, 443 (5th Cir.2001) (holding that plaintiffs FELA negligence claim for excessive train speed was precluded by FRA train speed regulations); Waymire v. Norfolk & W. Ry. Co., 218 F.3d 773, 776 (7th Cir.2000) (same); Nickels, 560 F.3d at 433 (holding that plaintiffs FELA negligence claim for improper installation of track ballast was precluded by FRA track ballast regulations); Brenner v. Consol. Rail Corp., 806 F.Supp.2d 786 (E.D.Pa.2011) (same); Monheim v. Union R.R. Co., 788 F.Supp.2d 394, 404 (W.D.Pa.2011) (holding that plaintiffs “design defect” and “failure to install” claims were precluded by FRSA and LIA regulations and therefore not cognizable under the FELA); but see Earwood v. Norfolk S. Ry. Co., 845 F.Supp. 880, 891 (N.D.Ga.1993) (holding that FRSA train speed regulations did not preclude plaintiffs FELA claim for unsafe train speed; regulations were not directed at the issue of employee safety). Illinois Central argues that Brent’s FELA negligence claim is explicitly precluded by FRA regulations and implicitly precluded by the FRA’s conscious decision not to enact a regulation requiring air conditioning on locomotives.
A. Express Preclusion
¶ 23. Federal courts applying the state-law preemption doctrine to the FELA have held that a plaintiffs FELA negligence claim will be precluded if the same claim would be preempted by the FRSA when brought by a nonemployee under state law. See Nickels, 560 F.3d at 430. Therefore, Brent’s FELA negligence claim is expressly precluded if an FRA regulation “cover[s] the subject matter” of the claim. See 49 U.S.C. § 20106 (2007). Preemption, and thus by extension, preclusion, is not favored “unless it is the clear and manifest purpose of Congress.” CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). “To prevail on the claim that the regulations have preemptive effect, petitioner must establish more than that they ‘touch upon’ or ‘relate to’ that subject matter, ... for ‘covering’ is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter.” Id. (internal citations omitted) (emphasis added). Illinois Central argues that Brent’s FELA negligence claim is expressly precluded by 49 C.F.R. Section 229.119(d), which requires locomotives to be properly ventilated, and by 49 C.F.R. Section 223.9, which requires locomotives to be equipped with safety-glazed windows, because these regulations cover the subject matter of Brent’s negligence theory.
1. Ventilation Regulation
¶24. The Fifth Circuit Court of Appeals has held that a FELA negligence claim is not precluded by 49 C.F.R. Section 229.119(d), the ventilation regulation. Weaver v. Mo. Pac. R.R. Co., 152 F.3d 427, 428 (5th Cir.1998). In Weaver, the plain *772 tiff, a locomotive engineer for the defendant railroad, was struck in the head by a bottle thrown through the open window of the locomotive he was operating. Id. The plaintiff brought a FELA negligence claim against the railroad, arguing that the railroad was negligent in failing to provide him with a safe place to work. Id. The plaintiffs central argument at trial was that the railroad was negligent in failing to equip its locomotives with air conditioning and/or protective window screens. Id. The plaintiff asserted that the defendant knew of the of the danger of injuries caused by open cab windows due to the documented history of stonings and shootings of the defendant’s locomotives. Id. at 430. A jury returned a verdict in favor of the plaintiff, and the railroad appealed. Id. Before the Fifth Circuit, the railroad argued that the LIA and its regulations totally occupy the field of locomotive safety. Id. at 429. The railroad argued that, because it complied with the LIA’s ventilation regulation, its failure to provide air conditioning or protective screens could not be considered negligent under FELA. Id. at 429-480. In rejecting the defendant’s argument, the Fifth Circuit reasoned that “the [LIA] ... cannot be regarded as [a] statute[] wholly separate from and independent of [FELA]. [It is] rather supplemental to it, having the purpose and effect of facilitating employee recovery, not restricting such recovery or making it impossible.” Id. at 430 (quoting Urie, 337 U.S. at 189, 69 S.Ct. 1018). The Fifth Circuit found that the purpose of the LIA ventilation statute was to ensure proper ventilation to cab occupants, not to protect them from stonings or shootings. Thus, the defendant’s compliance with that regulation did not address the safety of its employees from the known danger of ston-ings and shootings. Id. “[I]n this regard, the LIA and accompanying regulations do not totally occupy the field regarding locomotive safety.” Id. (emphasis in original). Accordingly, the Fifth Circuit held the trial court did not err in allowing the jury to consider whether, under FELA, the defendant railroad was negligent in failing to equip its locomotives with air conditioning or protective screens. Id.
¶ 25. While FELA does not expressly mandate the installation of air conditioning on locomotives, FELA does require railroads to provide their employees with a safe workplace, taking reasonable measures to prevent foreseeable hazards. A railroad’s compliance with its absolute duty to provide proper ventilation in its locomotives would not protect against the specific hazard resulting in Brent’s injury, and would therefore not protect it from negligence liability. As the Fifth Circuit held in Weaver, “compliance with these regulations, in light of the evidence presented at trial regarding the known dangers presented to locomotive engineers traveling through the southern States in the summer, does not address the safety of those engineers from known dangers, such as stonings.” Weaver, 152 F.3d at 430. Accordingly, we hold that the LIA ventilation statute does not preclude Brent’s negligence claim.
2. Safety-Glazed Window Regulation
¶ 26. Illinois Central argues that Weaver is not determinative of the preclusion issue because it does not address the application of the safety-glazing regulation. 49 C.F.R. § 223.9 (2013). This regulation requires that “[l]ocomotives, including yard locomotives, built or rebuilt after June 30, 1980, must be equipped with certified glazing in all locomotive cab windows.” 49 C.F.R. § 223.9 (2013). When the FRA proposed the enactment of the glazing regulation, it stated, “the intended effect of this regulation is to reduce the risk of death or serious injury for railroad *773 crew members and railroad passengers resulting from such persons being struck by flying objects, such as bullets.” “LOCOMOTIVES, PASSENGER CARS, AND CABOOSES Proposed Minimum Safety Requirement for Glazing Materials Installed in Windows,” 43 Fed.Reg. 47579 (Oct.. 16, 1978). The FRA further stated that glazing regulations were adopted because the risk of injury caused by “thrown or otherwise propelled objects ... would be diminished by the installation of improved glazing material.” Safety Glazing Standards — Locomotives, Passenger Cars and Cabooses, 44 Fed.Reg. 77348 (Dec. 31, 1979). Illinois Central’s compliance with this regulation is not only undisputed, it was conceded by Brent during oral argument on Illinois Central’s motion for summary judgment.
¶ 27. As several witnesses stated at trial, the protection provided by safety-glazed windows is not available to locomotive occupants when the windows are open.[5] Opening the window to allow for proper ventilation, a known condition, clearly defeats the safety glazing’s protection. See Weaver, 152 F.3d at 430 (“[Cjompliance with these regulations, in light of the evidence presented at trial regarding the known dangers presented to locomotive engineers traveling through the southern States in the summer, does not address the safety of those engineers from known dangers, such as stonings.” (first emphasis added)). Further, while the safety-glazing regulation certainly addresses the subject matter of Brent’s injury, there is no indication whatsoever that Congress intended this regulation to substantially subsume the issue of projectiles being launched at trains. Because we have found no case explicitly addressing this issue, because the LIA is generally intended to supplement, rather than limit, the remedy provided by the FELA, as the FELA and the FRSA have the same general purpose (railroad safety),[6] because FELA is interpreted liberally to allow recovery, and because preclusion is not favored, we hold that Brent’s claim is not expressly precluded by the LIA’s safety-glazing regulation.
B. Implied Preclusion
¶ 28. The Fifth Circuit has recognized that the doctrine of implied, or negative, preemption (and by extension, implied preclusion) under federal railroad safety standards arises “when the policymaker appears to be saying ‘we haven’t done anything because we have determined that it is appropriate to do nothing.’ ” King v. Ill. Cent. R.R., 337 F.3d *774 550, 557 (5th Cir.2003) (quoting Mo. Pac. R.R. v. R.R. Comm’n of Tex., 850 F.2d 264, 268 (5th Cir.1988) (internal citations omitted)). For implied preclusion to apply, the decision to forgo regulation must indicate “an authoritative federal determination that the area is best left un regulated, and in that event would have as much preemptive force as a decision to regulate.” Sprietsma v. Mercury Marine, 537 U.S. 51, 66, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002) (first emphasis added). Illinois Central argues that Brent’s FELA negligence claim is implicitly precluded because the FRA has on numerous occasions rejected proposed regulations that would require air conditioning on locomotives.[7]
¶ 29. In King, the plaintiffs vehicle struck a boxcar occupying a railroad crossing at night. Id. at 552. The plaintiff sued the defendant, the owner of the boxcar, for negligence, claiming the defendant should have placed reflective material on the boxcar to make it more visible to motorists. Id. at 552-553. The district court held that the plaintiffs claim was preempted under federal law, and the plaintiff appealed. Id. at 553. The Fifth Circuit affirmed the district court’s judgment, finding that the plaintiffs claim was implicitly preempted. Id. at 557. The court found that the FRA had funded a study to examine the effectiveness of using reflective material on railroad cars. Id. Because the materials used in the study quickly degraded due to the harsh railroad environment, the FRA found that requiring such materials was unmanageable and decided rule-making action was unwarranted. Id. Because the FRA had examined the issue and decided it should not promulgate regulations for the use of reflective materials on railroad cars, the Fifth Circuit held that any Mississippi law addressing the issue was implicitly preempted. Id.
¶ 30. King easily can be distinguished from the case at hand because it addressed preemption of a nonemployee state-law negligence claim rather than preclusion of a claim under FELA. Nevertheless, Illinois Central argues that the same principles apply to the relationship between FRSA and FELA. Illinois Central asserts that the issue of locomotive ventilation certainly is not an area that the FRA has failed to address. On the contrary, in 1997, the FRA tasked its Rail Safety Advisory Committee (RSAC) with investigating the need for regulating locomotive cab temperatures. The RSAC investigated the issue, and in 2000, proposed regulations that would require locomotives to be equipped with air conditioning. The FRA rejected these proposals and discontinued the RSAC working group, deciding no further temperature-control regulation was necessary at that time. Brent’s expert witness Lawrence Mann submitted a draft of FRSA to Congress including a provision that would require locomotives to be equipped with air conditioning, but the final version of FRSA does not include this provision. Mann also submitted to the FRA several proposed air-conditioning regulations, but these were all rejected.
¶ 31. Illinois Central’s argument here is essentially the same as its argument that Brent’s claim is expressly precluded by the LIA ventilation statute. It is clear that, as of the date of the incident, the FRA had expressed its intent not to require air conditioning on locomotives through its repeated rejection of proposed air-conditioning regulations. In fact, such a regulation *775 was not passed until 2012, and the FRA still has not passed a regulation setting a maximum allowable temperature in cabs. However, simply because the FRA carefully considered and rejected regulations requiring air conditioning “does not [in and of itself] convey an ‘authoritative’ message of a federal policy against [air conditioning in locomotives].” Sprietsma, 537 U.S. at 67, 123 S.Ct. 518. Nor does Illinois Central’s argument recognize the fact that the FRA’s choice not to require air conditioning in locomotives does not completely cover Brent’s theory of negligence that the need to open a window for proper ventilation places employees in danger from projectiles. As stated previously, FELA does not require Illinois Central to install air conditioning on its locomotives; it requires only that Illinois Central provide its employees with a reasonably safe workplace. The FRA’s decision not to require air conditioning on locomotives at the time of Brent’s injury does not address whether Illinois provided Brent with a reasonably safe workplace. Accordingly, we hold that Brent’s FELA negligence claim is not implicitly precluded by the FRA’s failure to adopt an air-conditioning regulation.
III. Whether Brent failed to prove that the lack of air conditioning on the locomotive caused his alleged injuries.
¶ 32. FELA is intended to be a broad, remedial statute, and it is construed liberally to effectuate its humanitarian purposes. Urie, 337 U.S. at 180, 69 S.Ct. 1018. Under FELA, a railroad has a duty to provide a safe workplace. Peyton v. St Louis Sw. Ry. Co., 962 F.2d 832, 833 (8th Cir.1992). FELA states in relevant part:
Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.
45 U.S.C.A. § 51 (1908). FELA holds railroads to the prudent-person standard of care. Reardon, 26 F.3d at 54 (citing Ackley v. Chicago & Nw. Transp. Co., 820 F.2d 263, 267 (8th Cir.1987)). To prevail on a FELA claim, a plaintiff is required to prove the traditional common-law elements of negligence: duty, breach, foreseeability, and causation. Robert v. Consol. Rail Corp., 832 F.2d 3, 6 (1st Cir.1987). Illinois Central argues that the trial court erred in denying its motions for directed verdict and JNOV because Brent failed to prove the element of causation.
¶ 33. The standard for determining the existence of a jury question on the element of causation in a FELA case was established by the United States Supreme Court in Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 77 S.Ct. 443, 448-49, 1 L.Ed.2d 493 (1957). In Rogers, the Court held that the test for a jury case in the FELA context is:
simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee’s contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly tailored to the single inquiry of whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.
*776 Id. at 506-07, 77 S.Ct. 443. However, “[t]hat FELA is to be liberally construed does not mean that it is a worker’s compensation statute.... The basis of [the employer’s] liability is his negligence, not the fact that injuries occur.” Nivens v. St. Louis Sw. Ry. Co., 425 F.2d 114, 118 (5th Cir.1970).
¶ 34. Giving Brent the benefit of all favorable inferences that reasonably may be drawn from the evidence, and considering the relaxed burden of proving causation in a FELA case, we find that the trial court did not err in denying Illinois Central’s motion for directed verdict and JNOV on the issue of causation. Brent presented evidence that the FRA enacted a regulation requiring all cab windows to be equipped with safety-glazing material in order to prevent injuries to railroad employees caused by projectiles. In addition, Brent presented evidence that several other railroads decided to install air conditioning on all their locomotives to allow their employees to keep their cab windows closed. Brent testified that he had to keep his windows open to let air into the cab, and several witnesses agreed that the protection of glazed windows would be negated when the windows were open. Thus, if the jury found that Illinois Central had breached its duty to provide Brent with a safe working environment, and that Brent’s injury was foreseeable to Illinois Central, then sufficient evidence established that Brent’s injury was caused in part, even in the slightest, by Illinois Central’s negligence.
IV. Whether Brent failed to establish that his injuries were reasonably foreseeable.
¶ 35. Illinois Central argues that the trial court erred in denying its motions for summary judgment, directed verdict, and JNOV on the issue of foreseeability. This Court applies a de novo standard of review to the denial of motions for judgment as a matter of law, considering all evidence in the light most favorable to the plaintiff. U.S. Fid. and Guar. Co. of Miss. v. Martin, 998 So.2d 956, 964 (Miss.2008). Judgment as a matter of law is appropriate only when there is a “complete absence of probative facts” to support the plaintiffs position. Rivera, 378 F.3d at 505.
¶ 36. Prior to trial, Illinois Central filed motions in limine seeking to exclude any evidence or testimony of any prior incidents that had not been shown to be substantially similar to Brent’s incident. The trial court held that prior occurrences would be admissible only if they were substantially similar to Brent’s incident. Illinois Central now argues that the trial court erroneously allowed the admission of testimony of prior incidents that were not substantially similar to the one in question. This Court reviews decisions regarding the admission or exclusion of evidence under an abuse-of-discretion standard. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936 (Miss.2002).
¶37. Reasonable foreseeability of harm is “an essential ingredient of [FELA] negligence.” Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). A “defendant’s duty [is] measured by what a reasonably prudent person would anticipate as resulting from a particular condition.” Id. at 118, 83 S.Ct. 659. Thus, the “duties are measured by what is reasonably foreseeable under like circumstances-by what in the light of the facts then known, should or could reasonably have been anticipated.” Id. (internal quotations omitted). The plaintiff must show that the employer had actual or constructive knowledge of the harmful condition. Williams v. Nat’l R.R. Passenger Corp., 161 F.3d 1059, 1063 (7th Cir.1998). If a person has no reason *777 able ground to anticipate that a particular condition would or might result in a mishap and injury, then the party is not required to do anything to correct the condition. Id. (citing Gallick, 372 U.S. at 118, n. 7, 83 S.Ct. 659).
¶ 38. A plaintiff can prove a defendant’s actual or constructive knowledge of a dangerous condition by presenting evidence of prior occurrences of similar incidents. However, we need not decide whether the trial court erred in admitting this evidence, because even if the testimony was improperly allowed, the record contains sufficient evidence of foreseeability for the issue to be a jury question. This Court should not invade the function of the jury.[8] The United States Supreme Court has specifically found that evidence of similar prior incidents is not necessary to a finding of foreseeability.
¶ 39. The jury in Gallick was instructed to take into consideration, in deciding foreseeability, that “no occurrence of the kind here alleged either occurred, or was known by defendant to have occurred.” Id. at 121, 83 S.Ct. 659 (internal quotations omitted). “The jury thus might have determined that, since there had been no similar incidents at this pool in the past, the respondent had no specific ‘reason’ for anticipating a mishap or injury to petitioner-a far too narrow a concept of foreseeable harm to negative negligence under the Federal Employers’ Liability Act.” Id. (emphasis added). Rather than employ strict common law standards of foreseeability, “the concept of foreseeability has been construed somewhat more liberally in FELA cases than it might otherwise be under common law.” Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 n. 1 (2d Cir.1996); see also Harbin v. Burlington Northern R.R. Co., 921 F.2d 129, 131 (7th Cir.1990) (“It is well established that the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action.”); Cowden v. BNSF Railway Co., 690 F.3d 884, 896 (8th Cir.2012). “Only when there is a complete absence of probative facts to support the conclusion reached (by the jury) does a reversible error appear.” Nivens v. St. Louis Sw. Railway Co., 425 F.2d 114, 120 (5th Cir.1970) (emphasis added) (internal quotations omitted); see also Kennedy v. Illinois Cent. R.R. Co., 30 So.3d 333, 336 (Miss.2010) (“When there is proof, even though entirely circumstantial, from which a jury may with reason make this inference of employer negligence, the burden of the employee is met.”); Canadian Nat’l/Ill. Cent. R.R. Co. v. Hall, 953 *778 So.2d 1084, 1093 (Miss.2007) (“Cases arising under FELA are to be left to the jury, and a jury’s verdict can only be set aside ‘when there is a complete absence of probative facts’ to support it.”). Furthermore, FELA negligence is a question of federal law, “not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs.” Weaver v. Missouri Pac. R.R. Co., 152 F.3d 427, 429 (5th Cir.1998).
¶ 40. Brent introduced ample evidence regarding the fact that a national safety standard exists requiring all railroads to use bullet-resistant materials on their trains. Specifically, bullet-resistant glazing materials are required in all locomotives “in order to protect railroad employees and railroad passengers from injury as a result of objects striking the windows of locomotives, caboose and passenger cars.”
¶ 41. Caselaw establishes that national standards are sufficient for the jury to deem that a defendant has constructive notice of a dangerous condition, and that the narrow locality and time-period restrictions advocated by Mississippi tort law are improper under FELA. See, e.g., Weaver, 152 F.3d at 430 (Proof of foreseeability included 698 instances of reported shootings or stonings of Union Pacific Railroad locomotives over a four-year period. No locality information was given. In fact, it is implied that the “locality” of these acts was that of all of the southern States, as the court refers to the “known dangers presented to locomotive engineers traveling through the southern States.” (emphasis added)); Sanders v. Nat’l R.R. Passenger Corp., 930 S.W.2d 36, 38 (Mo.Ct.App.1996) (“The trial court took judicial notice of the fact projectiles are often launched at trains, nationwide. This fact is sufficient to establish the railroad had notice that injury could occur at any given point on its train routes from an object coming through open windows. It is inconsequential that the railroad did not have notice of shootings in the park. The possibility of injury from a condition in the workplace is what must be reasonably foreseeable, not knowledge of the precise injury and location.” (emphasis added)); Apando v. Norfolk & Western Railway Co., 84 F.3d 803, 811 (6th Cir.1996), abrogated on other grounds by Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (plaintiffs expert testified as to ergonomic risk factors widely published in trade and scientific journals and accepted in the biochemical and ergonomics community, and court found “[a] jury could accept [the expert’s] testimony and find that a reasonably prudent employer would have known about the risk factors and how to ameliorate them,” and “the law does not impose a duty on an employer to address a safety hazard or risk only in the event that a similar injury has occurred before from the same cause”); Sleeman v. Chesapeake & Ohio R.R. Co., 290 F.Supp. 817, 822 (W.D.Mich.1968), reversed as to damages only by Sleeman v. Chesapeake & Ohio R.R. Co., 414 F.2d 305 (6th Cir.1969) (finding the accident reasonably foreseeable “to the prudent eye” and charging the railroad “with knowledge of current engineering safety ‘know-how’ ” in parking lot design); BNSF Railway Co. v. Nichols, 379 S.W.3d 378, 389-90 (Tex.App.2012) (jury verdict that accident was foreseeable upheld; railroad charged with knowledge of ergonomic injury because of two Association of American Railroads studies placed in evidence). Brent established that there exists a nationwide safety standard based on the known danger of projectiles being launched at locomotives. Illinois Central is certainly charged with knowledge of this nationwide safety standard and its basis for existence, given that it is required to follow the safety standard and the known *779 danger of projectiles being launched at locomotives was published with the safety standard. This evidence was more than sufficient for the jury to determine that Brent’s injuries were foreseeable to Illinois Central.
¶ 42. For a case to be reversed based on the admission or exclusion of evidence, a party must be actually prejudiced, harmed, or have a substantial right adversely affected. Bower v. Bower, 758 So.2d 405, 413 (Miss.2000). Thus, a harmless-error analysis is applicable — if “the weight of the evidence against the defendant is sufficient to outweigh [any] harm done by allowing admission of the evidence” then reversal is not warranted. Id. (internal quotations and alterations omitted). An error, if any, in the admission of evidence in this case is harmless. Illinois Central has not shown that it suffered any prejudice or harm from the admission of this evidence, or that its admission adversely affected a substantial right, especially under FELA’s relaxed foreseeability requirements, given that the record contains ample other evidence of foreseeability. Because sufficient evidence exists in the record (the nationwide railroad safety standards addressing the issue) showing that the railroad should have been aware of the known danger of projectiles being launched at trains, we affirm the jury verdict, regardless of whether the testimony regarding similar incidents should be stricken. This Court should not invade the province of the jury, as sufficient evidence exists to prove foreseeability.
V. Whether the trial court erred in admitting and considering the testimony of Lawrence Mann.
¶ 43. Prior to trial, Illinois Central filed a Daubert[9] motion seeking to exclude the testimony of Lawrence Mann, whom Brent had designated to give expert testimony regarding federal railroad safety regulations. The trial court denied Illinois Central’s Daubert motion and allowed Mann to testify. On appeal, Illinois Central argues that the trial court erred in allowing Mann to testify as an expert.
¶44. “When reviewing a trial court’s decision to allow or disallow evidence, including expert testimony, we apply an abuse of discretion standard.” Hall, 953 So.2d at 1094. Unless this Court concludes that a trial court’s decision to admit or exclude evidence was arbitrary and clearly erroneous, that decision will stand. Irby v. Travis, 935 So.2d 884, 912 (Miss.2006). Rule 702 of the Mississippi Rules of Evidence provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of rehable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Miss. R. Evid. 702. Under Rule 702, the trial court must apply a two-pronged inquiry into the admissibility of proposed expert testimony: (1) whether the witness is qualified, and (2) whether the testimony is relevant and reliable. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 35 (Miss.2003). Illinois Central disputes Mann’s qualifications as an expert and the *780 reliability of his testimony. In addition, Illinois Central argues that Mann was allowed to give inadmissible legal opinions during his testimony.
A. Expert Qualification
¶ 45. Illinois Central argues that Mann, an attorney, was not qualified to give expert testimony in the field of locomotive safety. “A trial judge’s decision as to whether a witness is qualified to testify as an expert is given the widest possible discretion.” Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 145 (Miss.2007). Regardless of “whether testimony is based on professional studies or personal experience, the ‘gatekeeper’ must be certain that the expert exercises the same level of ‘intellectual rigor that characterizes the practice of an expert in the relevant field.’ ” McLemore, 863 So.2d at 37-38 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 187, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
¶ 46. At trial, Mann testified that he worked as an attorney specializing in railroad safety. Mann’s firm primarily represents railroad workers and railworkers’ unions in civil cases. Mann worked as a principal draftsman of the FRSA in 1970. He has also worked with federal and state agencies in drafting railroad safety laws and regulations. Mann has discussed safety issues at meetings of the Association of American Railroads, a locomotive industry organization of which Illinois Central is a member. Mann’s testimony focused primarily on the need for air conditioning and safety-glazed windows on locomotives, issues he has advocated for many years. Mann explained that he had experience testifying as an expert witness in federal court on the topic of railroad safety. After outlining Mann’s qualifications, Brent offered him as an expert in the areas of (1) railroad safety, (2) the history of safety glass in locomotives, (3) the history of injuries to locomotive cab occupants caused by bullets or other projectiles, (4) the reasonableness of alternative methods for preventing injuries to locomotive cab occupants, (5) industry knowledge and standards regarding such injuries, and (6) other safety-related issues.
¶ 47. The trial court allowed Illinois Central to conduct a voir dire of Mann. During voir dire, Mann stated that he had never been an employee of a railroad. He also admitted that he had no training or education in locomotive design, engineering, or maintenance, nor was he qualified to perform locomotive inspections. Mann’s firm has been involved in numerous lawsuits against various railroads on behalf of railroad employees. During his deposition, Mann stated that his opinions were legal in nature, but during voir dire he stated that the basis of his opinion was factual. At the end of voir dire, Illinois Central renewed its Dauberb motion, and the trial court denied the motion. Mann’s direct testimony was limited in scope and was mostly factual in nature. Mann testified regarding the history of the locomotive safety-glass regulations and the recent trend of installing air conditioners in locomotives. The only opinion offered by Mann was that the railroad industry had knowledge of the need to install air conditioning in locomotives due to safety concerns.
¶ 48. Illinois Central objects to Mann’s qualifications mainly because he garnered most of his knowledge as a lawyer. However, under similar circumstances, this Court has held that a trial court did not abuse its discretion in allowing a witness with no railroad-employment experience to testify as an expert in railroad safety. Hall, 953 So.2d at 1095. In Hall, the plaintiff designated a railroad safety consultant as an expert in railroad safety *781 standards. Id. The expert had worked as a railroad claim agent in the 1960s, which required him to become familiar with railroad safety rules and educate employees regarding those rules. Id. at 1094. The expert later started a railroad safety consulting company, where he worked with attorneys, insurance companies, state transportation departments, and private industries on the topic of railroad safety regulations. Id. at 1094-1095. He indicated that he had been qualified as an expert in cases throughout the country. Id. at 1095. This Court held that the trial court did not abuse its discretion in allowing this witness to testify as an expert in the field of operating and safety rules. Id.
¶ 49. As did the expert in Hall, Mann demonstrated extensive specialized knowledge of railroad safety laws and regulations based on his career as an attorney working in the railroad industry and his experience drafting safety rules for state and federal agencies. The record reveals that none of Mann’s testimony went outside the bounds of his expertise. Illinois Central takes umbrage with the fact that Mann is not an engineer and is not qualified to perform locomotive inspections or maintenance, but Mann did not offer any testimony on such issues. Based on Mann’s specialized knowledge and training in the area of railroad safety laws and regulations, and because his testimony was limited to that area, this Court finds that the trial court did not err in finding Mann to be qualified to testify with respect to federal railroad safety rules.
B. Expert Reliability
¶ 50. Illinois Central also argues that Mann’s testimony was not relevant or reliable. This Court has adopted the United States Supreme Court’s standard for judging the admissibility of expert testimony. See Daubert, 509 U.S. 579, 113 S.Ct. 2786; Kumho Tire, 526 U.S. 137,119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); McLemore, 863 So.2d at 35-36. Expert testimony must be relevant and reliable to be admissible. McLemore, 863 So.2d at 38. In determining whether expert testimony is reliable, this Court may consider: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether, in respect to a particular technique, there is a high known or potential rate of error; (4) whether there are standards controlling the technique’s operation; and (5) whether the theory or technique enjoys general acceptance in the relevant scientific community. Id. at 37. This list is illustrative, but not exhaustive; the Daubert Court emphasized that the reliability inquiry contemplated by Rule 702 “is a flexible one.” Id. (quoting Daubert, 509 U.S. at 594, 113 S.Ct. 2786). Illinois Central’s most compelling claims are that Mann’s theory underlying his opinion has not been tested and is not generally accepted.
¶ 51. “A key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact” is “whether it can be (and has been) tested.” Daubert, 509 U.S. at 593, 113 S.Ct. 2786. Illinois Central argues that Mann’s theory regarding the need for air conditioning fails under this prong for several reasons. First, Mann admitted during his deposition that he had never performed an inspection of Brent’s locomotive and that he was unfamiliar with the area where the incident occurred. In addition, Brent claimed that some of the information used to form his opinion in this case is protected by attorney-client privilege. As stated earlier, at the time of Brent’s trial, Mann was currently representing other railroad workers and unions as an advocate for requiring air *782 conditioning on locomotives. Without divulging this information, Illinois Central argues that this Court cannot “be certain that the content of [the] studies [upon which the expert relies] is relevant to the facts at hand.” Watts v. Radiator Specialty Co., 990 So.2d 143, 146 (Miss.2008). As for the general acceptance of Mann’s opinion, Illinois Central argues that the absence of any FRA regulation requiring air conditioning clearly contradicts Mann’s opinion.
¶ 52. In response, Brent contends that the best test of Mann’s theory is evidence of the railroad industry’s conduct. Brent offered evidence that other railroads had begun installing air conditioning on their locomotives as early as 1988, eleven years before Brent’s injury. The FRA also began reviewing proposed air-conditioning regulations well before the date of Brent’s injury, although none of these proposals was enacted. Brent argues that the modern trend of requiring air conditioning proves both that Mann’s opinion has been tested and that it is generally accepted.
¶ 53. Illinois Central’s argument goes to the weight and credibility of Mann’s testimony rather than its admissibility. As stated previously, Mann has extensive knowledge of railroad safety regulations due to his experience as an attorney in the railroad industry. He personally works with state and federal agencies in drafting railroad safety legislation. His testimony was offered to educate the jury regarding the evolution of railroad safety regulations, as well as the railroad industry’s response to injuries similar to Brent’s. To the extent Mann’s testimony explained railroad industry standards and customs regarding proper ventilation, such testimony was certainly helpful in assisting the trier of fact. Illinois Central is correct that any testimony from Mann regarding the adequacy of ventilation system in Brent’s locomotive would have been of questionable reliability, as Mann admitted he was not qualified to inspect locomotives and had never even seen the locomotive in question. Mann never offered such testimony. Accordingly, we find that Illinois Central’s argument is without merit.
C. Legal Opinion
¶ 54. Illinois Central argues that Mann gave inadmissible legal opinions during his testimony. This assertion is founded primarily on the fact that Mann is a lawyer by trade. While Illinois Central is correct that witnesses are prohibited from giving legal opinions, this rule does not automatically disqualify an attorney from serving as an expert witness. “[M]erely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact.” Askanase v. Fatjo, 130 F.3d 657, 672 (5th Cir.1997). However, “[t]here being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.” Specht v. Jensen, 853 F.2d 805 (10th Cir.1988) (internal citations omitted).
¶ 55. The record in this case reveals only one true opinion offered by Mann. After reviewing the history of safety glazing and air conditioning in locomotives, Mann opined:
First, it’s clear to me that the entire railroad industry including the Illinois Central have notice and foreseeability of the need for both glazing and air conditioning because of the safety concerns. I have also observed that many railroads still do not equip locomotives with air conditioning, even though it’s a feasible way for proper ventilation and safety. And if a worker has to open a window because of heat and humidity, it will defeat the protections of the glazing. *783 That’s basically my observations and conclusions.
This opinion does not constitute an impermissible legal opinion. Rather, Mann’s opinion reflects only the railroad industry’s knowledge of injuries caused by projectiles coming through open cab windows and the feasibility of installing air conditioning. Mann never gave an opinion on whether Illinois Central’s actions violated LIA or FELA, questions that are reserved for the trier of fact. Nor did he try to explain to the jury the duties imposed by those statutes. Because the majority of Mann’s testimony was factual in nature, and because Mann’s only opinion was on a question of fact, the trial court properly denied Illinois Central’s motion to exclude Mann’s testimony.

CONCLUSION

¶ 56. We hold that the trial court erred in failing to grant Illinois Central’s motion for a directed verdict on Brent’s FELA negligence per se claim, as Brent failed to present any evidence indicating that Illinois Central violated the LIA ventilation statute. However, we affirm the jury’s general verdict for Brent, as Brent’s FELA negligence claim was properly before it, and the verdict on the FELA negligence claim was supported by sufficient evidence.
¶ 57. AFFIRMED.
RANDOLPH, P.J., KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND LAMAR, J.

. The dry bulb temperature is the temperature of air measured by a thermometer freely exposed to the air but shielded from radiation and moisture.

. The wet bulb temperature is the temperature a parcel of air would have if it were cooled to 100% relative humidity. It is the temperature felt when the skin is wet and exposed to moving air.

. The Boiler Inspection Act (BIA) was the predecessor to the LIA and was repealed when the LIA was enacted. The statutory language of the LIA relevant to this case is identical to that of the BIA.

. The regulation in question recently was amended to require all locomotives placed into service after June 8, 2012, to be equipped with air conditioning. See 49 C.F.R. § 229.119(g), (h) (2012). Locomotives in service prior to June 8, 2012, such as the one Brent was operating, must still meet the proper ventilation requirement, but they are not required to be equipped with air conditioning.

. The dissent argues that the fact that the window was open, defeating the safety glazing, "is of no matter,” citing a case that talks of windows being open for comfort, not for safety. Dissent ¶¶ 62-63. This is not a case in which the windows were clearly open merely for comfort. Illinois Central argues that, because the window was open, it complied with the ventilation regulation, stating that "[i]n support of its motion for summary judgment, Illinois Central submitted affidavit testimony ... that the locomotive complied with [the ventilation regulations] and provided proper ventilation through the availability of side windows that can be opened. ... Significantly, Plaintiff admitted in his deposition that the locomotive was properly ventilated with the window open as it was at the time of the alleged incident.” Illinois Central then turns around and argues that the safety glazing was sufficient protection against projectiles despite it being defeated by the open window, which allowed ventilation compliance. Its position is contradictory. Its own admitted manner of complying with the ventilation regulation completely defeats the safety-glazing regulation, further indicating that the safety-glazing regulation was not meant to substantially subsume the issue of projectiles being launched at trains, when open windows were a known and advocated practice.

. See Elston v. Union Pacific R.R. Co., 74 P.3d 478, 487-88 (Colo.App.2003).

. Illinois Central does not argue that Brent's claim is implicitly precluded by the safety-glazing regulation, nor does it present any proof of an authoritative decision by the FRA not to regulate the issue further by, for example, requiring safety screens or windows that cannot be opened.

. "The Congress when adopting [FELA] was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence.” Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 508, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). "Cognizant of the duty to effectuate the intention of the Congress to secure the right to a jury determination, this Court is vigilant to exercise its power of review in any case where it appears that the litigants have been improperly deprived of that determination.” Id. at 509, 77 S.Ct. 443. Thus, “[a] jury’s right to pass upon the questions of fault and causation in FELA actions must be viewed liberally; the jury’s power to engage in inferences is significantly broader than in common law negligence actions.” Pierce v. Southern Pac. Transp. Co., 823 F.2d 1366, 1370 (9th Cir.1987) (citing Ybarra v. Burlington Northern, Inc., 689 F.2d 147, 149 (8th Cir.1982)). “A reviewing court must uphold a verdict even if it finds only 'slight' or ‘minimal’ facts to support a jury’s findings of negligence.” Pierce, 823 F.2d at 1370. "[Fjoreseeability of harm is no less a matter generally left to the jury's broad discretion than any other part of the requisite proof to recover under the FELA.” Burns v. Penn Cent. Co., 519 F.2d 512, 514 (2d Cir.1975).

. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).