# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01275-COA

WILLIAM LOGAN, INDIVIDUALLY, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF CHARLIE PATSY LOGAN, DECEASED
           APPELLANT

v.

FORD MOTOR COMPANY, LINCOLN MOTOR COMPANY, AND KIRK AUTO COMPANY
           APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/2017 |
| TRIAL JUDGE: | HON. GEORGE M. MITCHELL JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDWARD BLACKMON |
| | MARCUS AMIR WILLIAMS |
| | BRADFORD JEROME BLACKMON |
| ATTORNEYS FOR APPELLEES: | D. STERLING KIDD |
| | BRADLEY WITHERSPOON SMITH |
| | GEORGE CLANTON GUNN IV |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 09/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. This is an appeal from the Grenada County Circuit Court's exclusion of expert testimony and grant of summary judgment. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Charlie Patsy Logan and her husband, William Logan, purchased a 2009 Lincoln Town Car from Kirk Auto Company (Kirk). Ford Motor Company (Ford) issued a recall

notice on their model's steering sector, and the couple took their car to Kirk for inspection in November 2013. Kirk did not find visible signs of any issue with the car, but ordered replacement parts for the steering sector regardless. The replacement parts were never installed. After the inspection, William damaged the car during a minor accident in which he hit a concrete block and refrigerator in his carport. The couple took the car to a different Ford dealership for repairs.

¶3.     One month later, 82-year-old Charlie Patsy drove down Mississippi Highway 35 through Carroll County. According to her car's power-train control module, her speed as she drove down this 55-mile-per-hour-limit two-lane road was over 80 miles per hour. The car veered off the road and wrecked. Charlie Patsy did not survive.

¶4.     In September 2014, William sued Ford, Lincoln Motor, and Kirk in the Grenada County Circuit Court under the Mississippi Products Liability Act (MPLA).[1] Claims against Lincoln Motor were dismissed with prejudice in November 2014.

¶5.     In September 2015, William tendered Derrick Rainey as "an expert witness in the field of Automotive engineering analysis and Technology" to support his assertion that Charlie Patsy's accident occurred because the Lincoln Town Car's steering column was defectively designed. The defendants deposed him several months later, then moved to exclude Rainey's opinions. The motions were withdrawn, but the defendants filed a renewed motion to exclude Rainey's opinions and moved for summary judgment in May 2017. The court granted both, finding that Rainey was not qualified and that there was no genuine issue of material fact.

---

[1] Mississippi Code Annotated section 11-1-63 (Rev. 2014).

¶6. William appeals to this Court, asserting that: (1) the circuit court erred when it determined that Rainey was not qualified as an expert; and (2) summary judgment was improper.

**STANDARD OF REVIEW**

¶7. "When reviewing a trial court's decision to allow or disallow evidence, including expert testimony, we apply an abuse of discretion standard." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 20 (¶22) (Miss. Ct. App. 2012). Unless we determine "that a trial court's decision to admit or exclude evidence was arbitrary and clearly erroneous, that decision will stand." *Id.* And "[a] trial court's grant of summary judgment is reviewed de novo." *Wright v. R.M. Smith Invs. L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id.*

**DISCUSSION**

I. **Did the circuit court err when it determined that Rainey was not qualified as an expert?**

¶8. William argues that Rainey is qualified to offer expert opinions regarding defective steering columns because he possesses the knowledge, skill, experience, training, and education to be a proper expert. He therefore asserts that the circuit court should have deemed Rainey's testimony admissible. But the appellees argue that Rainey is not qualified to offer the opinions, the opinions were not the product of a reliable methodology, and the opinions were not helpful to the trier of fact.

¶9. The Mississippi Supreme Court has emphasized that "only if the witness possesses

3

scientific, technical, or specialized knowledge on a particular topic will he qualify as an expert on that topic." *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 992 (¶15) (Miss. 2012) (quoting *Worthy v. McNair*, 37 So. 3d 609, 616 (¶23) (Miss. 2010)). But it is "not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman." *Kansas City S. Ry. Co. v. Johnson*, 798 So. 2d 374, 382 (¶31) (Miss. 2001). Indeed,"[t]he threshold for admissibility is not great, keeping in mind the fact that Rule 401 favors the admission of evidence when it has probative value." *Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 457 (¶10) (Miss. 2010).

¶10.　In the present case, the circuit court thoroughly analyzed Rainey's qualifications. It found that although Rainey was disclosed as "an expert witness in the field of Automotive engineering analysis and Technology," he had limited training, and his training was not in the designing or engineering of steering columns. In fact, Rainey's work predominantly focused on the servicing of cars manufactured by automakers other than Ford. The circuit court concluded that Rainey was "not qualified by education, training or experience to testify . . . ." Although the threshold for admissibility is not great, *Utz*, 32 So. 3d at 457 (¶10), Rainey did not meet it. Therefore, under the abuse-of-discretion standard, this Court affirms the circuit court's decision determining that Rainey was not qualified to testify as an expert witness.

¶11.　Although we affirm the circuit court's decision based on Rainey's qualifications, we

4

note that Rainey's testimony itself spoke neither to causation nor design defect as required under the MPLA. Miss. Code Ann. § 11-1-63 (Rev. 2002); *Herrington v. Leaf River Forest Prods. Inc.*, 733 So. 2d 774, 777 (¶10) (Miss. 1999); *Rowan v. Kia Motors Am. Inc.*, 16 So. 3d 62, 66 (¶12) (Miss. Ct. App. 2009). As a result, his testimony could not have "help[ed] the trier of fact to understand the evidence or to determine a fact in issue . . . ." M.R.E. 702(a).

## II. Was summary judgment improper?

¶12. William also asserts that summary judgment was granted in error. He argues that: (1) Rainey's opinion that there was a design defect makes it a question for the jury; and (2) Kirk was negligent in not discovering that design defect. His first argument was contingent upon our finding that the circuit court erred when it determined that Rainey was not qualified to testify as an expert witness. He argues that Rainey's testimony created a genuine issue of material fact, thereby making summary judgment improper. However, we have ruled conversely on the admissibility of that expert opinion. On his second assertion, we note that Kirk's alleged negligence is dependent upon William establishing that a defective design existed. Therefore, as William's argument fails there, so does his appellate argument concerning Kirk.

¶13. It is appropriate to grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. Products-liability claims like this one are

governed by the MPLA. *Williams v. Bennett*, 921 So. 2d 1269, 1273 (¶13) (Miss. 2006). And to survive summary judgment in a products-liability claim, the nonmovant needs to show that the product was:

> (1) designed in a defective manner (2) which rendered the product unreasonably dangerous to the plaintiff; (3) that the defective and unreasonably dangerous condition proximately caused the plaintiff's damages; (4) that the damages were not caused by an inherent characteristic of the product which cannot be eliminated without substantially compromising the product's usefulness or desirability and which an ordinary person would recognize; (5) that the defendant knew or should have known of the danger that caused the damage; and (6) that there existed a feasible design alternative that would have, to a reasonable probability, prevented the harm without also impairing the product's utility, usefulness, practicality or desirability.

*Thompson v. Echostar Commc'ns Corp.*, 89 So. 3d 696, 700 (¶15) (Miss. Ct. App. 2012) (brackets and internal quotation marks omitted). Additionally, "[t]he plaintiffs bear the burden of proof on the issue of causation and must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." *Rowan*, 16 So. 3d at 66 (¶12) (internal quotation marks omitted).

¶14. As discussed above, the circuit court properly determined that Rainey was not qualified to testify as an expert. It then reviewed "what [had] been presented as well as what [had] been stated during conferences with the [c]ourt . . . ." It found that William failed to establish causation, and that he "did not exhibit or bring to the [c]ourt's attention any expert witnesses to show that the 2009 Lincoln automobile left the plant in a defective manner."

¶15. Notwithstanding the fact that the circuit court did not err when it determined that Rainey was not qualified, our de novo review of the record indicates that summary judgment

was proper. William—who bears the burden of proof on this issue—failed to introduce evidence on the issue of causation that would lead us to reasonably conclude that it is more likely than not that conduct by the appellees caused the car to veer off the road and wreck. Even Rainey's testimony does not indicate causation: The first time Rainey saw the car, he did not attempt to turn the steering wheel to determine whether it was faulty and caused the accident that resulted in Charlie Patsy's death. The second time, however, Rainey did turn the steering wheel; and the wheels turned with it. Furthermore, Rainey never "tested the bearing which was involved with the steering sector." The results of that test might have sufficed as evidence of causation. But Rainey's testimony provided no evidence on that issue. And beyond Rainey's opinions, William proffered no additional expert testimony from other sources to attempt to show causation.

¶16. "When claimants do not fulfill their statutory obligation, they leave the courts no choice but to dismiss their claims because they fail to proffer a key element of proof requisite to the court's determination of whether the claimant has advanced a valid claim under the statute." *Williams*, 921 So. 2d at 1277 (¶25). William did not fulfill his statutory obligation under the MPLA, and, therefore, we find that summary judgment was proper.

## CONCLUSION

¶17. Because Rainey was not qualified, this Court affirms the circuit court's decision to exclude him as an expert under the abuse-of-discretion standard. Additionally, because William failed to introduce any evidence that afforded a reasonable basis for causation in this products-liability suit, we find that summary judgment was proper under our de novo

7

standard of review.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., TINDELL AND C. WILSON, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McCARTY, J. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS AND LAWRENCE, JJ. McDONALD, J., NOT PARTICIPATING.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶19. I concur with the majority that Mr. Rainey could not testify as an engineer. I also agree that Rainey's testimony did not address causation or design defect. I depart from the majority's opinion because I agree with ¶28 of Judge McCarty's separate opinion that even as a mechanic, Rainey could have aided the jury on the circumstances surrounding Charlie Patsy's accident and death. *Post* at (¶28). As such, I must respectfully dissent in part from the majority's decision.

**McCARTY, J., JOINS THIS OPINION IN PART.**

**McCARTY, J., DISSENTING:**

¶20. Because the mechanic and teacher proffered in this case had the knowledge, skill, experience, training, and education to be admitted as an expert—and even had hands-on experience with the car in which Ms. Logan died—he should have been allowed by the trial court to testify. And the majority affirms his exclusion despite the clear language of our Rules of Evidence and applicable precedent, I respectfully dissent.

¶21. Our Rule 702 says that you can become "[a] witness who is qualified as an expert"

8

in five general ways—through "knowledge, skill, experience, training, or education[.]" M.R.E. 702. The only point is that your "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" M.R.E. 702(a).

¶22. In this case Derrick Rainey certainly qualifies as an expert. He has an associate's degree in applied science in automotive technology from Holmes Community College. He is not just a mechanic—he also now *teaches* aspiring mechanics, stepping into the shoes of his own professors at Holmes. While he does not teach engineering, Mr. Rainey teaches classes on automotive steering and suspension—the exact issue in this case.

¶23. Specifically, Mr. Rainey testified he taught a "a 60-hour course" that meets three days a week. The course uses an automotive service textbook. When questioned about his text, Mr. Rainey explained that he had shifted to using this book in its fifth edition, as distinguished from the text he had previously taught. Before teaching at Holmes, Mr. Rainey had worked in private car dealerships and also worked as a mechanic. He was candid that he had never worked on the lower portions of a steering column, which was the part of the car at issue in this case.

¶24. The teacher conjoined his experience with a hands-on review of the car in question. Under the plain language of Rule 702, Mr. Rainey was qualified as an expert five ways. The mechanic was qualified as an expert based on his *training* as mechanic alone. He further was qualified as an expert through his *skill* and *experience* as a mechanic and as a teacher of automotive mechanisms. He likewise was qualified through his *education* in automotive

9

repair. He also was qualified through his unique *knowledge* of the allegedly defective machine in question—his hands-on evaluation of the car that Mrs. Logan was driving when she died.

¶25. The whole point is whether the testimony can help the trier of fact. The Supreme Court has allowed a lawyer to testify about the field of locomotive safety because he possessed "extensive knowledge of railroad safety regulations due to his experience as an attorney in the railroad industry," and "personally work[ed] with state and federal agencies in drafting railroad safety legislation." *Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 782 (¶53) (Miss. 2013). Despite being a lawyer, "[h]is testimony was offered to educate the jury regarding the evolution of railroad safety regulations, as well as the railroad industry's response to injuries similar to [the plaintiff's]." *Id.* "[S]uch testimony was certainly helpful in assisting the trier of fact." *Id.*

¶26. The Supreme Court turned aside many of the concerns about the expert as suitable for trial, since they went "to the *weight and credibility* of [the expert's] testimony rather than its *admissibility*." *Id.* (emphasis added). It is important to emphasize that admissibility and credibility are two different concepts. The trial court's role is to determine admissibility—to act as a gatekeeper. The credibility of an expert is a matter for a jury to weigh—not the trial court.

¶27. The trial court in this case took on both roles. Portions of the order granting summary judgment focused on whether the mechanic would be credible in testifying. The trial court listed the following points in granting summary judgment:

10

> [Mr. Rainey] admitted that he was not an engineer. He admitted that he did not have any expertise in metallurgy. He admitted he had never worked for an automobile manufacturer. He had never worked for a company that made or designed supplies for the automotive industry. He had never designed a part for a vehicle. He had never been involved in the design process of a part. He had never been involved in the testing of a part to determine if it was engineered properly or reasonably safe. He never consulted with an automobile manufacturer. He never consulted with an automotive manufacturer. **He has never been hired as an expert in any case other than this one pending before the Court.**

The trial court bolded that last part, despite the fact that of course every expert must have a first time in court, and that *Daubert* has nothing to do with whether you have testified before.[2] Some of this might have been good cross-examination material, but it is not confined to the arena of admissibility. Rule 702 does not require that you first work for the company that is a defendant or design parts for it. The trial court dinged the proposed expert for not being a metallurgist or an engineer—both of which he was not—but there is no requirement in car wreck cases like this one to be an expert in the exact field of engineering of a steering column. This is not a medical-malpractice case, where due to the complexity of the human body our Supreme Court has required a snug fit between practice area and qualification. *See Troupe v. McAuley*, 955 So. 2d 848, 857 (¶24) (Miss. 2007) (finding a neurosurgeon was not qualified to testify regarding otolaryngology). Instead, "it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." *Brown v. Mladineo*, 504 So. 2d 1201, 1202 (Miss. 1987).

---

[2] As one federal court concluded on this point, "[i]f witnesses could not testify for the first time as experts, we would have no experts." *In re ConAgra Foods Inc*., 302 F.R.D. 537, 551 (C.D. Cal. 2014).

11

¶28. Just because Mr. Rainey is not an engineer who builds steering columns does not mean he was unqualified to testify based upon his expertise as a teacher of how to repair steering columns and as a mechanic who has trained and studied them. Under the requirements of Rule 702 as the trial court seemed to declare it, one would first need to have multiple college degrees in multiple disciplines, designed car parts, and a history of testifying as an expert before being qualified. This is many miles beyond what Rule 702 and our precedent requires—either at this moment in history or historically. *See Ford Motor Co. v. Cockrell*, 211 So. 2d 833, 838 (Miss. 1968) (Plaintiff's expert was qualified when "he had been a truck mechanic for thirty-five years, . . . had rebuilt trucks from the ground up, including motors, transmissions, wiring systems, gear boxes and brakes," and "had eight mechanics in his employ," taking care of a fleet of trucks.).

¶29. Despite the clear language of Rule 702, the undisputed qualifications of Mr. Rainey, and the precedent above, the trial court determined the mechanic had *nothing* to "help the trier of fact to understand the evidence or to determine a fact in issue[.]" M.R.E. 702(a). This teacher and mechanic could have helped a jury understand why Ms. Logan died that day when her Lincoln rolled over and over again. Because he should not have been excluded, and summary judgment should not have been granted, I respectfully dissent.

**WESTBROOKS AND LAWRENCE, JJ., JOIN THIS OPINION IN PART.**